UNITED STATES of America, Appellee,

v.

**George C. NORRIS, Sr., Appellant.**

UNITED STATES of America, Appellee,

v.

**Barry SILVER, Appellant.**

Nos. 83–5277(L), 83–5278.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 5, 1984.
Decided Dec. 5, 1984.

Stanley E. Sacks, Norfolk, Va. (Sacks, Sacks & Larkin, Norfolk, Va., on brief) and William L. Perkins, III, Norfolk, Va. (Price & Perkins, Norfolk, Va., on brief), for appellants.

Raymond A. Jackson, Asst. U.S. Atty., Norfolk, Va. (Elsie L. Munsell, U.S. Atty., Alexandria, Va., on brief), for appellee.

Before WIDENER and CHAPMAN, Circuit Judges and HARGROVE, United States District Judge for the District of Maryland, sitting by designation.

CHAPMAN, Circuit Judge:

Appellants George C. Norris, Sr. and Barry Silver appeal their convictions under 12 U.S.C. § 1715z–4(b)(2) for a number of substantive counts and under 18 U.S.C. § 371 for conspiracy to use, willfully and knowingly, in violation of 12 U.S.C. § 1715z–4(b)(2), the proceeds from rents and other funds derived from a federally

insured housing project, while its mortgage was in default, for purposes other than to meet the actual and necessary expenses arising in connection with the project. Norris is also appealing from his conviction under 18 U.S.C. § 1001 for making false material statements. This appeal challenges the constitutionality of 12 U.S.C. § 1715z–4(b)(2) and raises numerous other claims of error. Finding the challenged statute to be constitutional and the other exceptions to be without merit, we affirm.

I

Defendant Norris has been in the real estate business in the Tidewater section of Virginia for more than twenty years and has various business interests. In 1974 Norris, another general partner, and nineteen limited partners started Shamrock Gardens, a 74 unit apartment complex in Chesapeake, Virginia. Norris' other business interests included part ownership in several other federally financed housing projects. His sole proprietorship, the Norris Realty Company, managed these projects. Defendant Silver was comptroller of nineteen business entities in which defendant Norris had some ownership or proprietary interest, including Shamrock Gardens.

Prior to the construction of Shamrock Gardens, Norris signed, as managing general partner, a regulatory agreement with the Department of Housing and Urban Development (HUD). This agreement provided for the operation of the project and contained clauses controlling the distribution of proceeds from rents and funds during a period of default. Shamrock Gardens was covered by a $1,353,200 federally insured mortgage to the Federal National Mortgage Association. On May 28, 1976 the mortgage holder declared the mortgage in default and requested relief from the Secretary of HUD. Thereafter the mortgage was assigned to the Secretary of HUD and the original mortgage holder was paid the balance due under the mortgage. After default HUD commenced negotiations with the defendants in an effort to arrange some type of payment on the indebtedness. Meetings between officials of HUD and the defendants continued for a number of months and early in these discussions HUD advised the defendants that during the period of default they could make no disbursements from the Shamrock Gardens funds for purposes other than for the necessary operating expenses of Shamrock Gardens. The bookkeeper for Shamrock Gardens was employed by Norris Realty Company, and Norris and Silver advised him never to make a disbursement from the Shamrock Gardens checking account, while the loan was in default, without the consent of either Norris or Silver. Throughout the remainder of 1976 and through all of 1977, 1978 and a portion of 1979 HUD officials attempted to negotiate with Norris a plan of repayment. The mortgage remained in default, and during this period, various amounts were disbursed from the Shamrock Gardens funds for purposes other than the necessary and operating expenses of Shamrock Gardens. Many of these disbursements were either for the personal benefit of Norris or for the benefit of other real estate entities in which he had a substantial interest. During this time Shamrock Gardens failed to submit to HUD as scheduled the required audited financial reports on Shamrock Gardens. An audited financial statement of Shamrock Gardens' financial condition was required to be filed within sixty days of the close of each fiscal year. On the form Shamrock Gardens submitted for the fiscal year 1978, two items were shown as maintenance expenses and decorating supplies which were for carpeting in Norris' personal residence and in a townhouse not a part of Shamrock Gardens. The defendants were managing other federally insured projects, they were familiar with the regulations, and they never expressed any lack of understanding of what they were required to do in the filing of various monthly and annual reports. When HUD finally took over the Shamrock Gardens project, it was over $400,000 in arrears.

**1120**

II

Appellants challenge the constitutionality of 12 U.S.C. § 1715z–4(b)(2) by claiming that it constitutes an impermissible delegation and abdication of legislative authority because it delegates to the Secretary of HUD the power to make laws by passing regulations the violation of which may be the subject of criminal prosecution.

Section 1715z–4(b) provides:

Whoever, as an owner of a property which is security for a mortgage described in subsection (a) of this section, or as a stockholder of a corporation owning such property, or as a beneficial owner under any business organization or trust owning such property, or as an officer, director, or agent of any such owner, (1) willfully uses or authorizes the use of any part of the rents or other funds derived from the property covered by such mortgage in violation of a regulation prescribed by the Secretary under subsection (a) of this section, or (2) if such mortgage is determined, as provided in subsection (a) of this section, to be exempt from the requirement of any such regulation or is not otherwise covered by such regulation, willfully and knowingly uses or authorizes the use, while such mortgage is in default, of any part of the rents or other funds derived from the property covered by such mortgage for any purpose other than to meet the actual and necessary expenses arising in connection with such property (including amortization charges under the mortgage), shall be fined not more than $5,000 or imprisoned not more than three years, or both.

■ The language and intent of the statute are clear and need no interpretation from HUD. The congressional intent is to prevent money of federally insured housing projects from being diverted to purposes other than actual and necessary expenses when the mortgage is in default. Congress enacted 12 U.S.C. § 1715z–4 in an effort to stop the diversion of funds from other than "actual and necessary expenses arising in connection with such property." Section

1715z–4(a) addresses insured mortgages and § 1715z–4(b) covers conversion of rents during default in cases "exempt from the requirement of any such regulation or is not otherwise covered by such regulation." The proscribed activity is clear because it applies to owners of property under mortgage who willfully and knowingly use any part of the rents or funds derived from the property for any purpose other than to meet the actual and necessary expenses, while the mortgage is in default. There is no need for HUD regulations to describe what is unlawful. The statute clearly states that if the loan is in default one may not use rent for any purpose other than meeting the actual and necessary expenses. This is the activity charged against the two defendants in fifteen of the counts in the indictment. The language is not ambiguous, and the intent is obvious to persons such as defendants who were involved with many federally insured projects.

■ Criminal statutes should be given their fair meaning in accord with the evident intent of Congress. *United States v. Rothberg*, 480 F.2d 534 (2d Cir.1973), *cert. denied*, 414 U.S. 856, 94 S.Ct. 159, 38 L.Ed.2d 106 (1973). Congressional intent is quite obvious under any reading of 12 U.S.C. § 1715z–4(b)(2). The statute is intended to prevent the skimming of funds while the mortgage is in default.

■ Appellants argue that counts 3 through 17 of the indictment do not allege an offense because the Shamrock Gardens mortgage was not insured at the time of the alleged offenses in that it had been reassigned to HUD by the original mortgagee. The language of Title 12 U.S.C. § 1715z–4(b)(2) clearly indicates that it is applicable to mortgages that are not insured or no longer insured. That section states that it covers mortgages "exempt from the requirement of any such regulation or ... not otherwise covered by such regulation."

The requirements of the statute are clear and unambiguous. The proscribed acts are obvious to anyone of normal intelligence.

The appellants were experienced in dealing with federally insured housing projects and the meaning and intent of the statute would be immediately apparent to them.

### III

■ Appellants contend that the evidence was insufficient to convict them of conspiracy. The verdict of the jury must be sustained if there is substantial evidence, taking the view most favorable to the government, to support the finding of guilt. *United States v. Sherman,* 421 F.2d 198 (4th Cir.1970), *cert. denied,* 398 U.S. 914, 90 S.Ct. 1717, 26 L.Ed.2d 78 (1970). Although there was no direct evidence of an agreement between the defendants to violate the law, the circumstantial evidence is overwhelming. The existence of a conspiracy need not be proved by direct evidence, but may be inferred from the facts and circumstances of the case. *Iannelli v. United States,* 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). HUD advised defendants, orally and in writing, not to spend the rental income for any purpose other than to meet the actual and necessary expenses of the project while the loan was in default. During a period of three years the defendant continually used Shamrock Gardens funds for a multitude of purposes unrelated to Shamrock Gardens. These expenditures ranged from as little as $300 to as much as $10,000 and covered surveying costs, attorney's fees, carpeting, payments on personal loans of defendant Norris, feasibility studies of real estate, purchase of trucks, loans to other Norris entities, loans to individuals with whom Norris was doing business, deposits to banks to collateralize personal loans to Norris, down payments for options on real estate and even payment of taxes due IRS by Norris Construction Company. Norris and Silver had instructed the Norris Realty Company bookkeeper to make no payments to HUD after the loan went into default as well as to make no payments or advances out of the Shamrock Gardens account without their permission.

■ This was ample evidence that there was an agreement between the defendants to do something forbidden by law, that the defendants were both knowing and willing members of the conspiracy; and that each committed overt acts in furtherance of its purpose. These are the essential elements needed to support a conspiracy conviction, *United States v. Falcone,* 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940), and knowledge and participation may also be proved by circumstantial evidence. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

### IV

In Count II of the indictment, George C. Norris, Sr. is charged with making a false, fictitious and fraudulent statement as to a material fact in a matter within the jurisdiction of HUD in violation of 18 U.S.C. § 1001. Violation of this statute was also charged as one of the purposes of the conspiracy in Count I. The indictment charges that the false material statement submitted to HUD was the financial statement of Shamrock Gardens for 1978 which claimed that $35,584.00 was expended for maintenance of the project when Norris knew that this figure included the purchase of carpet for his personal residence and for the residence of a friend. Appellants do not contest the fact that Shamrock Gardens spent $650 for the carpet and that this carpet was used in the residence of Norris and in the residence of his friend. Their point is that the amount of $650 is not material when it is considered as a part of the entire financial statement and that there was no evidence that this misstatement influenced or affected HUD's decisionmaking processes.

■ There is no requirement that the false statement influence or effect the decision making process of a department of the United States Government. The essential elements required to be proved under an 18 U.S.C. § 1001 count are:

1. Making and using or causing the making and using of a false writing or document as to a material fact in relation

to a matter within the jurisdiction of a department of the United States.

2. Doing the act knowing at the time that the writing or document was false, fictitious or fraudulent, and

3. Doing the act knowingly and willfully.

*United States v. Seay,* 718 F.2d 1279 (4th Cir.1983), *cert. denied* — U.S. —, 104 S.Ct. 2677, 81 L.Ed.2d 873 (1984).

 Materiality is a question of law to be determined by the trial judge, *United States v. Baker,* 626 F.2d 512, 514, n. 4 (5th Cir.1980), and influencing or affecting the department decision-making process is an element to be considered in making this determination. The test of materiality is whether the false statement has a natural tendency to influence agency action or is capable of influencing agency action. *United States v. Diaz,* 690 U.S. 1352 (11th Cir.1982).

 The false statement in this case meets the above test. Here, HUD had been nursing along Shamrock Gardens since its construction. HUD officials had been negotiating with defendants in an effort to arrange a plan for the project to make payments on the note and mortgage. If HUD had known that project funds were being used to purchase carpeting for Norris' personal use at a time when he would not agree to make mortgage payments, such information would have a tendency to influence HUD's position in the continuing negotiations.

Under these facts it is not the size of payments but it is the act of making a false statement about the payments that is material. A true statement could have put HUD on notice and caused it to investigate the affairs of Shamrock Gardens and in the process, uncover other past improper expenditures and prevent future improper payments.

### V

 The trial judge imposed unusual sentences. He used split sentences under 18 U.S.C. § 3651 but provided that the various sentences run consecutively. Norris received sentences suspended upon the service of 70 days as to each and Silver's sentences were suspended upon the service of 60 days as to each count, but all sentences were consecutive. There is nothing in the language of 18 U.S.C. § 3651 that prohibits consecutive sentences. The total time of the consecutive split sentences is considerably less than the defendants could have received upon conviction on any one of the counts of the indictment.

 A trial judge is vested with broad discretion in sentencing. If the sentence is within the statutory limits it will not be reviewed in the absence of extraordinary circumstances. *United States v. Wilson,* 450 F.2d 495 (4th Cir.1971).

 Consecutive sentences may be imposed after convictions of conspiracy and the underlying substantive offenses. *Iannelli v. United States,* 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1974). Use of consecutive sentences is discretionary, *United States v. Wylie,* 625 F.2d 1371 (9th Cir.1970), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1980). The fact that defendants may have been eligible for parole earlier than under some other form of sentence does not invalidate these sentences.

### VI

The defendants claim error because the district court refused to quash a grand jury subpoena of records of Shamrock Gardens which were maintained by Norris Realty Company, the sole proprietorship of defendant Norris, and refused to suppress at trial the records obtained under the subpoena because of the alleged government misconduct in examining certain records while they were under seal.

 Norris contends that the records of Norris Realty Company were his personal records and further contends that the partners of Shamrock Gardens had no control over the records or access to them, so that they remained the personal property of Norris. Norris seeks support in *Bellis v.*

*United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974), contending that Shamrock Gardens does not qualify as the "collective entity." His reliance on *Bellis* is misplaced. Norris Realty Company maintained the records of Shamrock Gardens for the partnership which owned the project. Norris Realty maintained the books showing the income and expenditures of the project, and it also kept possession of the checkbooks and bank statements and wrote all checks for Shamrock Gardens. Norris Realty also filed all tax returns and prepared HUD reports. Under the law, any partner would have the right to examine all of these records. They were not confidential as among the partners, nor were they personal as to Norris. Norris Realty maintained the records on numerous real estate ventures and Mr. Norris may not shield all of these records by claiming that they are personal. *Bellis* does not protect subpoenaed records held by one in a representative capacity when it is fair to say that the records are the records of an organization and not of an individual. *Bellis,* 417 U.S. at 93, 94 S.Ct. at 2185. Here Norris Realty was keeping the records in its representative capacity as the bookkeeper for the partnership, and the records are those of the partnership itself and not of one of the individual partners.

■ When these records were subpoenaed the court ordered them sealed and ordered the attorneys for the government and defendant Norris to review the records and attempt to agree on the records that were personal to Norris, the records that might relate to other business enterprises, and the records that related solely to Shamrock Gardens. The attorneys failed to agree as to a number of the records and the assistant United States attorney directed an FBI agent to examine the records to obtain the account numbers and bank custodians so this information could be used at the subsequent hearing on the motion to quash. The FBI agent examined the records that were under seal. The trial court criticized government counsel for violating the sealed order, but the court concluded that the records "were the life blood of the partnership" and that Norris brought about the confrontation because he failed to agree as to records that were obviously reachable by subpoena. Although the action of Norris in attempting to shield these records does not justify the action of the assistant United States attorney or the FBI agent in reviewing the records under seal, the agent did little more than identify the various bank records, so they could be referred to at the hearing before the district judge. At this hearing the trial court found that all of these records were subject to subpoena, and they were admitted in evidence at the trial. Norris has stated no reason, nor has he produced any authority to support his claim that the bank records should have been suppressed and not used at the trial. He urges that the court use its supervisory power to discourage prosecutors from violating orders sealing records. In *Lopez v. United States,* 373 U.S. 427, 440, 83 S.Ct. 1381, 1388, 10 L.Ed.2d 462 (1963), the court held that the supervisory power to refuse to receive material evidence should be sparingly exercised. At the hearing on the motion to suppress, the trial judge held that neither the attorney for the government nor the attorneys for the defendants had complied with the prior order of the court as to the examination of these records and he directed that they do so immediately. These discovery type problems are best left to the discretion of the trial judge, and there has been no showing of abuse of discretion.

**VII**

■ There is no merit to the claim that the trial judge improperly interjected himself into the case by asking questions of certain witnesses. A trial judge is entitled to ask questions pertinent to developing the facts in an effort to clarify. A trial judge is not an umpire but is a governor to see that justice is done. *Pollard v. Fennell,* 400 F.2d 421 (4th Cir.1968). "He may intercede because of apparent inadequacy of examination or cross-examination by counsel, or to draw more information from

relevant witnesses or experts who are inarticulate or less than candid." *Crandell v. United States,* 703 F.2d 74, 78 (4th Cir. 1983). On the present record it is obvious that the trial judge sought to clarify and in doing so he did not prejudice the defendants.

The remaining exceptions are without merit.

AFFIRMED.