898 F.2d 148
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Leslie MAXEY, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Benner JONES, III, Defendant-Appellant.
 Nos. 88-5155, 88-5163.
 United States Court of Appeals, Fourth Circuit.
 Argued: July 26, 1989.
Decided: March 7, 1990.
 
 Appeals from the United States District Court for the Eastern District of North Carolina, at Fayetteville. James C. Fox, District Judge. (CR-88-5)
 Argued: Thomas Kieran Maher, Beskind and Rudolf, P.A., Chapel Hill, N.C., for appellants.
 Peter W. Kellen, Assistant United States Attorney, Chief, Criminal Section, Raleigh, N.C., for appellee.
 On Brief: David J. Rudolf, Beskind & Rudolf, P.A., Chapel Hill, N.C., Melissa H. Hill, Roger W. Smith, Tharrington, Smith & Hargrove, Raleigh, N.C., for appellants.
 Margaret Person Currin, United States Attorney; John Stuart Bruce, First Assistant United States Attorney, Raleigh, N.C., for appellee.
 E.D.N.C.
 AFFIRMED.
 Before DONALD RUSSELL, WIDENER and K.K. HALL, Circuit Judges.
 PER CURIAM:
 
 
 1
 Robert Leslie Maxey and Benner Jones, III were convicted of violating 18 U.S.C. Sec. 1001 and 18 U.S.C. Sec. 371 (concealing a material fact from the Veterans Administration and conspiracy to defraud the United States). In this consolidated appeal,[1] they argue that there was insufficient evidence to establish that Maxey had an interest in the property in question; that there was insufficient evidence that Maxey was under a duty to disclose his interest; that there was not adequate notice to Maxey of a duty to disclose; that the indictment was flawed in not alleging a duty to disclose; that there was insufficient evidence of a "trick, scheme or device"; that Maxey's interest was not a "material fact"; that Maxey and Jones' action was not illegal so an agreement to perform it could not be a conspiracy; and that the district court erred in instructing the jury. Finding no error, we affirm.
 
 
 2
 Robert Maxey and his wife, Phyllis Paulin[2], were the owners of and officers in the Dunbar Corporation. Maxey was Dunbar's president and controlled the day-to-day activity of the corporation. Dunbar Corporation was operated by Maxey as a real estate business.
 
 
 3
 As a result of Maxey's earlier conviction for making false statements to the Veterans Administration (VA), the VA decided to cease providing VA loans[3] for any property that Maxey had an interest in, pursuant to 38 U.S.C. Sec. 1804(b) and 38 C.F.R. Sec. 36.4361. To implement its decision, the VA sent Maxey a letter, on March 6, 1981, which included the following language:
 
 
 4
 You are hereby notified that effective immediately the Veterans Administration will no longer appraise any dwelling or housing project owned, sponsored, constructed, or listed for sale by you or by an enterprise or organization in which you have an interest. Such refusal to appraise applies to and is effective as to agents, representatives, and correspondents when acting for or in behalf of you or of any enterprise or organization in which you have an interest. Hereafter, VA will also refuse to process any offer to purchase VA-owned properties submitted by you.
 
 
 5
 This action is taken pursuant to the authority of the Administrator under Section 1804(b), Title 38, U.S. Code, and Title 38, Code of Federal Regulations, Section 36.4361. The charges set out herein are within the meaning of that statute.
 
 
 6
 The letter went on to discuss Maxey's previous conviction for making false statements to the VA and informed Maxey of his right to appeal.
 
 
 7
 Maxey took the letter to his attorney, Jones. Jones and Maxey decided that they would circumvent the VA ban by preparing deeds that would convey properties to a straw man who was not on the VA suspension list. The straw man's name would appear on documents to the VA and the proceeds from the sale would go back to Dunbar. Lawrence S. Glindeman, Paulin's son, agreed to act as the straw man.[4] Deeds were prepared conveying eight properties from Dunbar Corporation to Glindeman.[5] Although the deeds indicate that the property was conveyed for valuable consideration, no money or anything of value was given as consideration. The deeds were recorded and North Carolina excise tax was paid which would indicate consideration was paid equaling the reasonable value of the property.[6]
 
 
 8
 In 1981, Jeannette Johnson[7] was hired by Paulin to work for Accord Realty. Eventually, Maxey approached Johnson and convinced her to sell property for him with loans guaranteed by the VA since he could not sell them with VA financing because he was suspended from doing business with the VA. Since Johnson was without a license to sell real estate, Maxey made her a corporate officer of Dunbar Corporation, which owned the property. Maxey later took Johnson to see the properties and warned her that it was important that no one knew of his interest in the properties because he was not allowed to sell homes with loans guaranteed by the VA.
 
 
 9
 The first property Johnson sold was 217 Lee Street, Spring Lake, North Carolina. Johnson found a purchaser who was a veteran, filled out the contract for sale, and then gave it to Maxey to look over. After Maxey examined the contract, Paulin signed for Glindeman as the seller. Paulin then transmitted the information and a request for a VA appraisal to the Kissell Mortgage Company. The VA eventually approved the guarantee on the mortgage. The closing took place in Jones' office. All proceeds of the sale went to Dunbar Corporation with nothing going to the purported seller, Glindeman, the straw man.
 
 
 10
 The other sales followed the same pattern with some minor exceptions. One such exception involved the property at 305 Rutherford. When Accord Realty called the mortgage company, it notified them that Dunbar Corporation was the owner. When the information reached the VA, the VA noticed the connection to Dunbar, which was suspended because of its connection to Maxey, and denied the guarantee. After the VA took that action, Accord had Kissell send the VA a copy of the deed where Dunbar Corporation had transferred the property to Glindeman. The guarantee was eventually approved and events occurred as in the other transactions. Another notable exception took place involving the three Wilson Street properties. Maxey and his wife separated before the Wilson Street properties were sold. Maxey became concerned that his stepson would eventually not cooperate as a straw man. He arranged to have a power of attorney drawn up so that Johnson could sell the properties for Glindeman. Maxey further arranged to set up Bragg Investment Company with Johnson as a corporate officer. By deed dated August 25, 1983, Johnson, acting for Glindeman, transferred the three properties to Bragg Investment Company. Johnson then sold the properties to veterans. An additional difference in the last sale was that the check for it was made out directly to the Dunbar Corporation.
 
 
 11
 At separate trials, the juries found Maxey and Jones guilty of all counts charged. The district court, however, granted their motions for judgment of acquittal on nine of the counts, leaving in place convictions on six counts for which they were sentenced. The first argument is that there was insufficient evidence to establish that Maxey had an interest in the property. The district court found that "the evidence disclosed that Maxey at all times had a financial interest (as opposed to a legal interest) in each of the properties" (emphasis in original). Maxey tries to disavow an interest in the property in two ways.
 
 
 12
 First, he argues that he had no interest in the property because after Dunbar Corporation had conveyed the property to the straw man it had no "legal interest" in the property. He relies heavily on North Carolina real estate and property law. Even assuming the defendant's interpretation of North Carolina property law is correct,[8] the issue at trial was not whether Maxey had a technically valid "legal interest," but whether he had an interest. Given the overwhelming evidence that Maxey was the real party in interest and that Glindeman was merely a straw man, the district court properly found that Maxey at all times had a financial interest in the property which complied with the requirements of the statutes.[9]
 
 
 13
 The second argument is that Maxey had no interest in the property because the financial interest in the property was technically that of the Dunbar Corporation. Maxey and his wife were the sole stockholders in Dunbar. Maxey acted as its president, and his wife acted as its vice president. Maxey had a very real financial interest in Dunbar and all of its transactions. As the March 6, 1981, letter made clear to Maxey, the suspension applied to property "owned, sponsored, constructed, or listed for sale by you or by an enterprise or organization in which you have an interest."
 
 
 14
 Defendants next raise three related arguments regarding a duty to disclose. They argue that there was insufficient evidence that Maxey was under a duty to disclose his interest in the property; that there was not constitutionally adequate notice to Maxey of a duty to disclose; and that the indictment was flawed in not alleging a duty to disclose.
 
 
 15
 Given that the sufficiency of the evidence of a duty to disclose and the adequacy of the notice of the duty to disclose are intertwined, they will be discussed together. At separate trials the juries found the appellants guilty on all counts charged. Finding that Maxey was under no duty to disclose his interest on certain deeds, VA forms requesting appraisals, and sales contracts, the district court granted the defendants' motion to set aside the verdict and for acquittal on nine counts. The district court, however, refused to grant these motions for acquittal on counts involving concealment on the VA settlement statements (HUD 1 Forms). A duty to disclose can arise from government forms, United States v. Muntain, 610 F.2d 964, 971-72 (D.C.Cir.1979), and that duty applies here. The HUD form in question required the name of the seller and the amount due to him from the sale. On the forms, defendants used either the name of Glindeman (the straw man) or Jeannette Johnson (Paulin's employee) as the seller and stated that the net proceeds of each sale went either to Glindeman or Johnson.[10] Such proceeds, in reality, went to Maxey through the Dunbar Corporation. Given the requirements of the HUD 1 forms, we believe there was sufficient evidence that Maxey was under a duty to disclose his interest. Additionally we believe that Maxey had fair notice of his duty. The Constitution requires that a defendant be given a fair warning of his duty to disclose before the government can prosecute for concealment under 18 U.S.C. Sec. 1001. United States v. Anzalone, 766 F.2d 676 (1st Cir.1985). But that notice requirement was complied with. Proof of Maxey's notice of a duty to disclose is even more extensive than merely the requirements of the HUD 1 form. Maxey received the letter clearly informing him that the VA would no longer appraise any property which he or "an enterprise or organization in which you have an interest" or "any agents, representatives, and correspondents when acting for or in behalf of you or any enterprise or organization in which you have an interest" "owned, sponsored, constructed, or listed for sale." Responding to the letter, Maxey, Jones and others set up an elaborate scheme to conceal Maxey's interest in the properties. Such a course of conduct "evidenced an awareness of the notice he denies receiving." United States v. Masters, 612 F.2d 1117, 1121 (9th Cir.1979), cert. denied, 449 U.S. 847 (1980). We are convinced Maxey had a fair warning of his duty to disclose his interest in the properties.
 
 
 16
 Defendants next argue that the indictment was flawed in not alleging a duty to disclose. The argument goes that the duty to disclose is an element of the crime and that, since an indictment must allege every element of the crime charged, the indictment is fatally flawed. While it is true that the government must generally prove that a defendant had a duty to disclose before it can convict for concealment under 18 U.S.C. Sec. 1001, United States v. Irwin, 654 F.2d 671, 678-79 (10th Cir.1981), cert. denied, 455 U.S. 1016 (1982), the duty to disclose is not an element of the crime. In United States v. Richeson, 825 F.2d 17, 20 (4th Cir.1987), we upheld a conviction for concealment under Sec. 1001 where the defendant was under no duty to disclose. In Richeson, we held that the defendant's willful intent to cause a concealment in conjunction with a bank's duty to file Currency Transaction Reports was sufficient to allow a conviction under Sec. 1001. The concern with a duty to disclose goes to constitutional requirements of due process and adequate notice. Since the duty to disclose is not an element of the crime, there is no error in the indictment for not alleging that Maxey had a duty to disclose his interest. The indictment followed the statute[11] and adequately charges the crime of concealment under Sec. 1001.
 
 
 17
 The next argument is that there was insufficient evidence for the jury to find that defendants concealed Maxey's interest in the property by a "trick, scheme or device." In order to convict for concealment under Sec. 1001, the government must prove the material fact was concealed by means of a "trick, scheme or device." United States v. Woodward, 469 U.S. 105, 108 (1985). Even if to convict there must be more than merely evidence of nondisclosure, and evidence of an affirmative act by which means a material fact is concealed as has been required in United States v. London, 550 F.2d 206, 213 (5th Cir.1977), there is ample evidence to support this proposition. The evidence shows that Maxey, Jones and others agreed to a scheme to circumvent the VA's suspension of Maxey. Among other things, it showed several affirmative steps taken to conceal Maxey's interest including conveying the properties to a straw man, paying North Carolina excise taxes on the transfer to make the transfer appear to be a transfer for value, warning Johnson to keep Maxey's interest secret, and sending the VA a copy of a deed to allay its suspicion that Maxey had an interest in the property. Such evidence was sufficient for a finding that Maxey's interest was concealed by a "trick, scheme or device."
 
 
 18
 Defendants next argue that Maxey's interest was not a "material fact." "Materiality is a question of law to be determined by the trial judge." United States v. Norris, 749 F.2d 1116, 1122 (4th Cir.1984), cert. denied, 471 U.S. 1065 (1985). The district court found Maxey's interest to be material and so instructed the jury. A fact is material if it has "a natural tendency to influence agency action or is capable of influencing agency action." Norris at 1122. Here, concealment of Maxey's interest not only was capable of influencing the VA's actions but actually did influence it to guarantee loans which it would not have guaranteed if it had known of Maxey's interest. We see no error in the district court's ruling on materiality.
 
 
 19
 Defendants next argue that the actions that Maxey and Jones took were lawful so an agreement to do the acts could not be a conspiracy under 18 U.S.C. Sec. 371. Although it may be true that individually many of the actions Maxey and Jones undertook may be lawful, "it is well settled that acts which are themselves legal lose their legal character when they become constituent elements of an unlawful scheme." United States v. Hajecate, 683 F.2d 894, 896-97 (5th Cir.1982), cert. denied, 461 U.S. 927 (1983). As discussed above, the scheme that Maxey and Jones developed to conceal from the VA Maxey's interest in properties was in violation of 18 U.S.C. Sec. 1001. The agreement to take the actions, therefore, constituted a conspiracy under 18 U.S.C. Sec. 371, not to mention an intent to defraud under the same section. The juries found that the defendants were guilty of a conspiracy and we have no reason to doubt their conclusions.
 
 
 20
 The defendants' final argument is that the district court improperly instructed the jury in two ways. First, they argue that the district court erred in not instructing the jury on the nature of Maxey's interest. The district court instructed the jury that the government had to prove beyond a reasonable doubt that the defendant "concealed or covered up, a material fact." The material fact at issue in the entire trial was Maxey's interest in the properties sold with VA financing. To make it clear to the jury, the district court instructed that "Robert L. Maxey's interest, if any, in the real property is a material fact." The defendants complain that the district court did not further define "interest." However, "[i]t is well settled that a court need not define terms that are not unduly technical or ambiguous or that are within the common understanding of the jury." United States v. Pepe, 747 F.2d 632, 675 n. 78 (11th Cir.1984). We believe "interest" in the context of this trial and these instructions is a term which requires no additional definition.
 
 
 21
 Appellants' second argument regarding jury instructions is that the district court failed to instruct the jury that a legal duty to disclose is an essential element of the crime of concealment under Sec. 1001. That question has been disposed of by our discussion above.
 
 The judgments of conviction are
 
 22
 AFFIRMED.
 
 
 
 [1]
 Although Jones and Maxey were tried separately, largely the same evidence was introduced at both trials. Since the issues raised on appeal are essentially the same, their cases have been consolidated for appeal
 
 
 [2]
 Phyllis Paulin is also known as Phyllis Glindeman
 
 
 [3]
 The action the VA takes is to refuse to appraise the property, which prevents the loan process from proceeding
 
 
 [4]
 Glindeman's wife, Hilda Carleen Glindeman, also signed most of the documents. For simplicity's sake they will be referred to collectively as Glindeman
 
 
 [5]
 The following properties in Spring Lake, North Carolina, were deeded from Dunbar to Glindeman:
 
 
 [1]
 217 Lee Street
 
 
 [2]
 213 Lacock Street
 
 
 [3]
 625 Eva Circle
 
 
 [4]
 307 Rutherford Street
 
 
 [5]
 305 Rutherford Street
 
 
 [6]
 304 Wilson Street
 
 
 [7]
 306 Wilson Street
 
 
 [8]
 307 Wilson Street
 
 
 [6]
 Under Sec. 105-228.28 of the N.C. General Statutes a tax is collected at the time the deed is recorded. It is taxed at a rate of 50 cents per 500 dollars of purchase price. If the conveyance is a gift, no tax is collected. Sec. 105-228.29. By paying the tax, Maxey was able to make the conveyance appear to be one for actual consideration
 
 
 [7]
 At the time of trial Jeannette Johnson's name was Jeannette Rowell
 
 
 [8]
 We do note that under North Carolina law the Dunbar Corporation apparently had a legally enforceable right to the proceeds from the sale of these properties. See Schmidt v. Bryant, 112 S.E.2d 262 (N.C.1960)
 
 
 [9]
 We also reject Maxey's related argument that there was a variance between the indictment and proof. Maxey argues that he was indicted for concealing his "legal interest" and proof at trial involved his "financial interest" in the properties. We fail to read the indictment as limited to legal interests. The indictment alleged that Maxey concealed "the ownership, sponsorship, or other pecuniary interests of defendant ROBERT LESLIE MAXEY of or in said properties."
 
 
 [10]
 For example, part "E" of HUD 1 requested the "name of seller," and line "603" of HUD 1 requested the amount of "Cash to seller."
 
 
 [11]
 An indictment that follows the statutory language is ordinarily valid. United States v. American Waste Fibers Co. Inc., 809 F.2d 1044, 1046 (4th Cir.1987)