911 F.2d 725
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
GREGORY THOMAS GAMBER, Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
DOMINGO ANTONIO LAGOS, Defendant-Appellant.
 Nos. 89-5254, 89-5256
 UNITED STATES COURT OF APPEALS,
FOURTH CIRCUIT
 Argued: July 20, 1990
Decided: August 21, 1990
 
 Appeals from the United States District Court for the Middle District of North Carolina, at Durham. Richard C. Erwin, Chief District Judge. (CR-89-120-D)
 ARGUED: James B. Craven, III, Durham, North Carolina, for Appellant Gamber; Richard Allen Elmore, PFAFF, ELMORE & ALBRIGHT, Greensboro, North Carolina, for Appellant Lagos. David Bernard Smith, Assistant United States Attorney, Senior Litigation Counsel, Greesnboro, North Carolina, for Appellee.
 ON BRIEF: Robert H. Edmunds, Jr., United States Attorney, Greensboro, North Carolina, for Appellee.
 Before ERVIN, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Gregory Gamber and Domingo Lagos appeal their conviction for conspiracy to escape from the Chatham County Jail in North Carolina, in violation of 18 U.S.C. Secs. 371 and 751(a). We affirm.
 
 
 2
 * Randall "Big Bubba" Stevens is a jailer at the Chatham County Jail. He testified that beginning on April 21, after the defendants had been found guilty on unrelated charges, Lagos began asking Stevens if he wanted to make some money. On April 26,[1] Stevens took Lagos out of his cellblock and to the doctor's office area on a pretext to discuss the matter. Stevens testified that Lagos offered to set Stevens up for life if he helped Lagos and Gamber escape. He offered to have $10,000 or $20,000 put into Stevens' truck before the escape. Lagos asked for some maps, a gun, and policemen's or deputy sheriffs' uniforms. Stevens asked about Doggett, another inmate, but Lagos said Doggett was not involved. Lagos requested some cocaine and/or liquor as well.
 
 
 3
 On April 30, Gamber received a sealed white envelope. Pursuant to jail policy, Stevens opened it in front of Gamber and determined that it contained $100 bills wrapped in a white piece of paper. Stevens testified that Gamber said, "you might as well keep it; it's yours." Stevens replied that he could not take it then and gave the envelope to Gamber.[2] That evening Gamber gave Stevens the envelope through his cell window as Stevens was taking Lagos off for another discussion in the doctor's office area. When Stevens got to the office, he found five $100 bills inside the envelope. During their discussion, Lagos promised Stevens, among other things, cars, jewelry, and $10,000-$20,000 immediately with another $30,000 after the escape. Lagos also explained that during the escape a helicopter would wait for them two miles from the jail and that Stevens, and Stevens' parents, could come to Canada with them. Stevens put some vodka in a two-liter bottle of Coke and gave it to Lagos.
 
 
 4
 Stevens then brought the money and the information about the escape conspiracy to Chief Deputy Sheriff Don Whitt. The two went to the home of Lt. Charles Thomas and told him what had happened. The police planted a recording device in the doctor's office area and Stevens brought Lagos into the office for another conversation on May 1. Stevens indicated he was worried and wanted more money. Lagos sympathized and said he would have to check with "Gregg" about more money.
 
 
 5
 After Gamber and Lagos were arrested for conspiracy to escape, another inmate, Willie Edwards, approached Stevens and said that he had heard those two inmates and Kevin Doggett, also an inmate, discussing the escape in the shower. He entered into a plea agreement with the FBI in return for testifying in this case. At trial, Edwards testified that in late April 1989 he was taking a shower about 12 feet from the two defendants and Doggett. Edwards said that because the water in his shower was going on and off he could overhear the conversation between the three inmates. He testified that he heard them talking about escaping from the jail by bribing "Big Bubba" (Randall Stevens). He heard them discuss offering the guard $100,000 with $500 paid immediately to show sincerity, $30,000 before the escape, and $70,000 after the escape. Edwards said that he heard Lagos offer to discuss the matter with the guard. Edwards also testified that he saw Lagos leave the cellblock on two occasions for an hour or two and that he had seen Gamber pass an envelope to "Big Bubba" through a food slot in the door.
 
 
 6
 In addition to the testimony of Edwards and Stevens, the jury also heard an enhanced version of the taped conversation between Stevens and Lagos on May 1. The jury returned a verdict of guilty against both defendants. This appeal followed.
 
 II
 
 7
 On appeal, the defendants contest only the sufficiency of the evidence used to convict them. The guilty verdict "must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). In order to prove conspiracy to escape, the government must prove both knowledge of and participation in the conspiracy and an overt act by the defendants in furtherance of the purpose of the agreement. United States v. Norris, 749 F.2d 1116, 1121 (4th Cir. 1984). The existence of the conspiracy may be inferred from the facts and circumstances of the case. United States v. Laughman, 618 F.2d 1067, 1075 (4th Cir. 1980).
 
 
 8
 With respect to Gamber, the government showed his knowledge of the conspiracy to escape through Edwards' testimony about the conversation in the shower and through Stevens' testimony about the $500. The testimony indicating that Gamber gave Stevens $500 easily satisfies the overt act requirement. His argument on appeal is essentially that he was unhappy in jail and talked about escape, but did not actually conspire to escape. He also attacks the credibility of Edwards, a convicted felon with a plea agreement based on his testimony. While these facts may affect the weight a jury might give the testimony, the jury was still entitled to believe Edwards' story.[3] Taking the evidence in the light most favorable to the government, Gamber conspired with Lagos to escape from the jail.
 
 
 9
 The evidence against Lagos is even more substantial. In addition to testimony from Edwards and Stevens, the jury heard a tape recording of Lagos discussing the planned escape attempt. That evidence alone would establish his knowledge of and participation in the conspiracy. Offering money to Stevens, if nothing else, was an overt act in furtherance of the agreement to escape.
 
 
 10
 For the above reasons, the convictions are affirmed.
 
 AFFIRMED
 
 
 [1]
 The record contains some conflicting evidence concerning the date of this conversation. During his direct examination, Stevens said that the conversation took place "the Friday night before the 31st of May." J.A. 43-44. However, he later indicated that Gamber passed him the $500, which was clearly after his first conversation with Gamber, on Sunday, April 30. Moreover, the County Sheriff verified that Stevens came to him with the attempted escape story on May 1, 1989
 
 
 [2]
 Steven gave Gamber the envelope even though jail regulations allow inmates to receive no more than $20 at one time
 
 
 [3]
 The defendants make the further argument that because they are both able to speak Spanish it is inherently incredible that they would have spoken English while conspiring to escape from jail in the shower where Edwards, who does not understand Spanish, could overhear. We cannot agree. While Lagos is Columbian and fluent in Spanish, he also speaks English and it appears that Gamber and Doggett are both native English speakers. Merely because it may have been more prudent to speak in Spanish does not mean that the jury was unreasonable if it chose to credit Edwards' testimony