27 F.3d 564
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
Frank Grover SELBE, III, Defendant-Appellee.
 No. 92-5717.
 United States Court of Appeals, Fourth Circuit.
 Argued April 15, 1994.
Decided June 27, 1994.
 
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke. Jackson L. Kiser, Chief District Judge. (CR-92-61-R)
 Argued: Thomas Ernest Booth, United States Department of Justice, Washington, DC. On brief: E. Montgomery Tucker, United States Attorney, Karen B. Peters, Assistant United States Attorney, United States Department of Justice, Washington, DC, for Appellant.
 Argued: Guy M. Harbert, III, Gentry, Locke, Rakes & Moore, Roanoke, VA. On brief: S.D. Roberts Moore, Melissa Warner Scoggins, Gentry, Locke, Rakes & Moore, Roanoke, VA, for Appellee.
 W.D.Va.
 AFFIRMED.
 Before MURNAGHAN, Circuit Judge, and SPROUSE, Senior Circuit Judge, and RESTANI, Judge, United States Court of International Trade, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 The United States appeals from a judgment of the district court granting Frank G. Selbe, III, a judgment of acquittal after his conviction by a jury of violating 18 U.S.C. Sec. 1001, for making a false statement to a United States Probation Officer as to a material fact relating to his sentencing for a violation of federal income tax laws. The district court held that the statement Selbe was accused of making was not false and, in any event, was not "material." We agree and affirm.
 
 
 2
 Selbe was an attorney-at-law and businessman residing and practicing in Roanoke, Virginia. In 1985, he married Vicki Longley, a New York fashion designer and businesswoman, who moved to Roanoke. Two days after their marriage, Selbe and his new wife signed a prenuptial agreement* which is at the center of this case. Section 12 of the agreement provided:
 
 
 3
 Frank shall transfer title of the family home, known as Oak Knoll, 101 27th Street, Roanoke, Virginia to Vicki within one year hereafter or at such later time as the mortgage holders will consent. In the event of sale, the home shall be deemed marital property, and Vicki shall receive no less than one-half the proceeds, plus sums determined under section 4 above. Prior to any transfer of title or sale, the parties agree that Vicki shall have no claim of title, use or enjoyment upon the divorce of the parties.
 
 Section 4 of the agreement provided:
 
 4
 Each party acknowledges that if that party's separate property is used for marital property expenditures, there will be no reimbursement to the separate property of the party so expending the same. Each party further agrees that if the marital property is utilized to pay off separate property debts of either party, unless otherwise agreed in writing by the parties, reimbursement shall be made to the other party on demand.
 
 
 5
 In the fall of 1990, Selbe was indicted for violation of income tax laws in connection with some of his previous business activities. Pursuant to a plea agreement, in August 1991, he pled guilty to one count of filing a false tax return and to two counts of failing to file a tax return. Ann Martin, a federal probation officer, was assigned the task of preparing the presentence investigation report. She required Selbe to complete a "Personal Financial Statement" form and return it to her. It is this financial information that led to Selbe's indictment for violating section 1001 by attempting to deceive the government.
 
 
 6
 Selbe and his wife, Vicki, lived in an expensive residence in Roanoke, which had been owned and occupied by Selbe prior to their marriage. In late 1989, as Selbe's financial condition worsened, he began negotiations to sell the property and finally succeeded, selling it to two physicians in late 1990 for $850,000. After existing mortgages were paid, Selbe was to receive a $350,000 note (which included interest) and the sum of $93,700.71. On the day of the sale and pursuant to the 1985 prenuptial agreement, Selbe assigned the note to his wife, Vicki.
 
 
 7
 Approximately one year later, Selbe completed the "Personal Financial Statement" form at issue here. Martin, the probation officer, had advised him that it was not necessary to include in the asset portion of the form any of his wife's assets if he had no interest in them. Selbe was convicted for his answer to the following question:
 
 
 8
 Within the last three years, have you encumbered or disposed of any asset or property with a cost or fair market value of more than $1,000? If so, give the following information: Date, Amount, Property Transferred or Encumbered, To Whom.
 
 
 9
 He responded: "Sale of personal residence to D.L. and L.W. Hodges on 1/8/92 with proceeds distributed of $93,700." Selbe did not mention either the mortgage or the $350,000 note. A week after Selbe had returned the form to Martin, she examined the real estate records in Roanoke and learned that he did not own his residence. She looked no further, however, to discover the existence of the $350,000 note. When she met with Selbe and his wife at the Roanoke residence two weeks later, she asked about the sale of the house. Selbe explained that he had sold it to two Louisiana doctors but that he was "housesitting" it for them until they moved to Roanoke. When Martin asked Selbe to account for the money from the sale, he explained that "all he got was $93,700 and that that money had gone to pay off all his debts and judgments...." Again, Selbe did not mention the $350,000 note or the prenuptial agreement.
 
 
 10
 Two months later, in March 1992, an IRS investigator discovered the existence of the $350,000 note. Selbe was arrested and subsequently indicted for denying to the probation officer:
 
 
 11
 that he had any assets, directly or indirectly, other than those declared on the "Personal Financial Statement" which he presented to her, and [appellee] specifically failed to disclose that he held any mortgages, and further failed to disclose any "assignment" to his wife of an asset, a $350,000 note, in response to the question, "Within the last three years, have you encumbered or disposed of any asset or property with a cost or fair market value of more than $1,000? If so, give the following information: Date, Amount, Property Transferred or Encumbered, To Whom."
 
 
 12
 At trial, Selbe contended that the financial statement did not require a listing of the note because it belonged to his wife by virtue of the prenuptial agreement. The jury rejected that defense and convicted him.
 
 
 13
 We review the sufficiency of the evidence to sustain a conviction de novo and evaluate the evidence in the light most favorable to the government. Our chore is to determine whether any rational trier of fact could have found each of the elements of the offense beyond a reasonable doubt. United States v. Campbell, 977 F.2d 854, 856 (4th Cir.1992), cert. denied, 113 S.Ct. 1331 (1993).
 
 
 14
 Viewing the evidence under this standard, we agree with the district court that Selbe should not have been convicted. The prenuptial agreement, in our view, is quite clear that his wife was to receive "no less than one-half the proceeds" of the sale. If there were any doubts as to the meaning of this clause, section 4 of the agreement added that any encumbrances by Frank Selbe were not to be paid from Vicki's portion of the proceeds. So viewed, Vicki had at least an equitable right to the entire amount of the $350,000 note on the day of the sale. When asked if he had encumbered or disposed of any asset with a fair market value of more than $1,000 in the past three years, Selbe responded that he had sold the residence with the proceeds of $93,700 distributed. The jury incorrectly interpreted the answer as being false, and this was the sole basis of his conviction.
 
 
 15
 In our view, the answer was true. Under the terms of the prenuptial agreement, the note belonged to Selbe's wife, and he had been told by Martin on more than one occasion not to list the assets of his wife. According to Selbe's testimony, he originally intended to have only Vicki's name on the note, but, on the advice of the title insurance attorney and the closing attorney, he had his name added to it. He assigned the note to his wife the day after closing, and, when the first payment on the note ($50,000) was received in March 1991, both Selbe and Vicki endorsed the check and deposited it into Vicki's personal account.
 
 Under 18 U.S.C. Sec. 1001:
 
 16
 Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully conceals or covers up by any trick ... a material fact ... shall be fined not more than $10,000 or imprisoned not more than five years, or both.
 
 
 17
 The district court found that the note in question did not belong to Selbe so that he could not have concealed his ownership or disposal of it. In signing over the note to his wife in January 1991, Selbe simply did what he was contractually bound to do and what a court of equity could have otherwise forced him to do. He was justified in considering the note to be his wife's property. We also agree with the district court that the charge of attempted concealment by Selbe defies logic. Selbe clearly provided enough information to alert the government to the existence of the note, and he knew that a probation officer and probably Internal Revenue Service agents would have access to information concerning him. He mentioned the sale of his house, both in his financial statement and in his discussion with Martin. As the district court stated, to "find that Selbe had an intent to deceive under these circumstances stretches the evidence too far."
 
 
 18
 The issue of materiality is a question of law to be determined by the trial court. United States v. Silver, 749 F.2d 1116, 1122 (4th Cir.1984), cert. denied, 471 U.S. 1065 (1985). Because we have determined that Selbe did not knowingly or willfully conceal, however, it is not necessary to decide if the district court's alternative holding on materiality is correct.
 
 AFFIRMED
 
 
 *
 Although the agreement was signed two days after Selbe's marriage, it was styled a "PRENUPTIAL AGREEMENT," and the parties and district court used the same term. We do likewise