**NILSON VAN & STORAGE COMPANY, Appellee,**

v.

**John O. MARSH, Jr., Secretary of the U.S. Department of the Army; John Lehman, Secretary of the U.S. Department of the Navy; Verne Orr, Secretary of the U.S. Department of the Air Force, Appellants.**

**UNITED STATES of America, Appellee,**

v.

**NILSON VAN & STORAGE; Howard A. Nilson, Appellants.**

**UNITED STATES of America, Appellant,**

v.

**NILSON VAN & STORAGE; Howard A. Nilson, Appellees.**

Nos. 84–1336, 84–5180(L) and 84–6634.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 4, 1984.

Decided Feb. 13, 1985.

Rehearing and Rehearing In Banc Denied March 18, 1985.

Bruce G. Forrest, Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C. (Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Henry Dargan McMaster, U.S. Atty., Columbia, S.C., Robert E. Kopp, Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., on brief), for Marsh et al.

Robert T. Bockman, Columbia, S.C. (Charles Porter, Elizabeth Van Doren Gray, McNair, Glenn, Konduros, Corley, Singletary, Porter & Dibble, P.A., Columbia, S.C., on brief), for Nilson Van & Storage Co.

Charles Porter, Columbia, S.C. (Elizabeth Van Doren Gray, McNair, Glenn, Konduros, Corley, Singletary, Porter & Dibble, P.A., Columbia, S.C., on brief), for Nilson Van & Storage Co. and Howard A. Nilson.

Margaret G. Halpern, Dept. of Justice, Washington, D.C. (Richard E. Reed, Leighton Aiken, Dept. of Justice, J. Paul McGrath, Asst. Atty. Gen., Charles F. Rule, Deputy Asst. Atty. Gen., John J. Powers, III, Dept. of Justice, Washington, D.C., on brief), for U.S.

Before WINTER, Chief Judge, MURNA-GHAN, Circuit Judge, and DUPREE, Senior United States District Judge for the Eastern District of North Carolina, sitting by designation.

HARRISON L. WINTER, Chief Judge:

These three appeals, two of which were consolidated with one another, are so related that we decide them in a single opinion. Additionally, the decision of one of the appeals effectively decides the others.

All of the appeals arise out of an indictment against Nilson Van & Storage Company and Howard A. Nilson, its president (collectively referred to as "Nilson"), for price-fixing in violation of the Sherman Act, mail fraud, and making false statements to a government agency in violation of 18 U.S.C. § 1001. A jury convicted the defendants of making false statements but acquitted them on the other charges. While the indictments were pending, the Department of Defense, Nilson's largest customer, suspended it from contracting with the government to render moving and storage services.[1] Together with Checker Transfer & Storage Company (Checker) and Millen Moving and Storage, Inc. (Millen), which were similarly indicted and similarly suspended, Nilson sued to set aside the suspension orders, and the district court granted a preliminary injunction barring the suspension.[2] No. 84–1336 is the government's appeal from the grant of interim injunctive relief.

After conviction, Nilson moved for a new trial on the ground, *inter alia*, that the district court had incorrectly charged the jury with regard to the elements of the false statements charge. Although the district court ruled that its instructions "taken as a whole" were correct, it concluded that out of "an abundance of caution" it should

---

1. Subsequent to the entry of the preliminary injunction, the Army modified the suspension to allow Nilson to conduct business with the Department of Defense as agent for other government contractors. However, Nilson was still prohibited from direct contracting with the government.

2. At trial, Checker and Millen were both acquitted on all counts. The government has therefore lifted their suspension, and it suggests that the injunction as it pertains to them should be vacated and the case remanded with instructions to dismiss for mootness. *See United States v. Munsingwear*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950). We will order this to be done.

grant a new trial. The government then moved for reconsideration of the grant and reinstatement of the guilty verdict; and when its motion was denied, it appealed from the order granting a new trial. (No. 84–6634). Before the government's motion for reconsideration was decided, Nilson, having obtained the right to a new trial, moved to dismiss the false statements count of the original indictment on the ground that a new trial would violate the guarantee against double jeopardy. The district court denied this motion, and Nilson appeals (No. 84–5180).

We conclude that we have jurisdiction to entertain the appeal in No. 84–6634 and that the government's appeal is meritorious. We therefore reverse the order granting a new trial, order the guilty verdicts reinstated, and direct that judgment be entered thereon. Because there is thus no need for a new trial, our ruling renders moot Nilson's appeal in No. 84–5180 in which it contends that it would be subjected to double jeopardy if retried. And because Nilson thus stands convicted of making a false statement in violation of 18 U.S.C. § 1001, the basis for granting a preliminary injunction against suspension is removed and the order granting the ·injunction must be reversed.

We consider the appeals in their logical order.

## I.

### No. 84–6634

This appeal presents two questions for decision, first, whether we have jurisdiction to entertain the appeal, and, if so, whether the district court correctly granted a new trial for legal error in its charge to the jury.

#### A. Jurisdiction

The question of jurisdiction arises because at the time that Nilson was convicted and at the time the district court granted

Nilson a new trial (April 27, 1984), the government had no right of appeal from the adverse ruling. However, on May 9, 1984, it moved for reconsideration of the order granting a new trial, and the district court did not deny its motion until September 19, 1984.[3] On October 12, 1984, the President signed into law the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, which, among other provisions and effective immediately, amended 18 U.S.C. § 3731 to afford the government a right of appeal from an order of a district court "granting a new trial after verdict or judgment." On October 18, 1984, the government filed a notice of appeal, and that date was within thirty days from denial of its motion for reconsideration.

We think that the 1984 Act gives us jurisdiction to decide this appeal. By its terms, it authorizes the government to appeal from an order granting a new trial after verdict. Of course, an existing provision of § 3731, as well as the provisions of Fed.R.App.P. 4(b), provide that an appeal by the government shall be taken within thirty days after the entry of the order from which the appeal is taken, but it is settled law that a timely motion for rehearing or reconsideration tolls the running of the time for appeal. *See United States v. Dieter*, 429 U.S. 6, 97 S.Ct. 18, 50 L.Ed.2d 8 (1976); *United States v. Healy*, 376 U.S. 75, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964). While it is true that the Federal Rules of Criminal Procedure do not specifically provide for motions for reconsideration and prescribe the time in which they must be filed, *United States v. Healy, supra,* treats as timely a motion for reconsideration filed before the order sought to be reconsidered becomes final. Since § 3731, as amended, and Fed.R.App.P. 4(b) prescribe thirty days within which the government must appeal, we think that the government's motion to

---

**3.** On September 10, 1984, the government sought a writ of mandamus in our court for an order directing the district court to reinstate the jury verdicts of guilty and to vacate its order

granting a new trial. The petition was denied by another panel of the court without statement of reasons. *See In re* United States, No. 84–1959 .(4 Cir.1984) (unreported).

reconsider was timely[4] and that the government filed a timely appeal unless, of course, it is concluded that § 3731, as amended, has no application to an order granting a new trial after verdict when the order was entered prior to October 12, 1984.[5] We therefore turn to Nilson's argument that § 3731, as amended, does not have that retrospective effect.

■ Usually, when there is a change in the law while a case is pending, a court applies the law in effect at the time of the decision and not antecedent law, unless so doing would result in manifest injustice or there is a statutory direction or legislative history to the contrary. *See Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974); *United States v. Schooner Peggy,* 1 Cranch 103, 2 L.Ed. 49 (1801). The statute amending § 3731 so as to give the government the right to appeal asserted in this case makes no provision as to whether it applies to orders granting a new trial entered before the effective date of the amendment, and we have not been referred to any legislative history, nor have we found any, bearing on the question. We therefore consider Nilson's claims of manifest injustice.

■ Nilson argues, first, that to recognize a government right to appeal this grant of a new trial would violate the prohibition against enactment of ex post facto laws contained in article 1, section 9 of the Constitution. We think that this argument must be rejected on the authority of *Mal-*

*lett v. North Carolina,* 181 U.S. 589, 21 S.Ct. 730, 45 L.Ed. 1015 (1901). In that case two defendants were indicted, tried, and convicted of conspiracy to defraud in the criminal court of Edgecombe County, North Carolina. They appealed to the superior court, and it reversed the judgment of conviction and granted a new trial. While the case was pending in the superior court, the state enacted legislation giving it the right to appeal to the supreme court from an order of the superior court granting a defendant a new trial.[6] The state exercised this right, and the supreme court reversed the judgment of the superior court and directed that the sentence imposed by the trial court be carried into execution. Before the Supreme Court of the United States, defendants contended that since the statute giving the state the right of appeal was enacted after the commission of the offense charged and the trial resulting in convictions, it was an ex post facto law invalid under article 1, section 10 of the Constitution.[7]

After an extensive review of its own precedents on ex post facto laws, the Court concluded:

> [W]e think it may be concluded that the legislation of North Carolina in question did not make that a criminal act which was innocent when done; did not aggravate an offense or change the punishment and make it greater than when it was committed; did not alter the rules of evidence, and require less or different evidence than the law required at the

---

4. We note that the district court ultimately denied the government's motion for reconsideration on its merits and not on the ground that it was untimely.

5. We are aware that the Handbook on the Comprehensive Crime Control Act of 1984 and Other Criminal Statutes Enacted by the 98th Congress (December, 1984) published by the Department of Justice states that the government's new right to appeal from an order granting a new trial after conviction applies "to any new trial order entered on or after the effective date of the Act (October 12, 1984)" and further that "appeals of post-conviction new trial orders require the approval of the Solicitor General." *Id.* at 155. Since the Solicitor General obviously authorized the government's appeal in No. 84–6634, we can

only conclude that the handbook expresses policy, but not necessarily law.

6. As an interesting aside, the legislation giving the state this right of appeal was applicable only to the eastern district of North Carolina of which Edgecombe County is a part. There was no such right for the western district. In the case a contention that the legislation denied equal protection of the laws was rejected.

7. Article 1, section 10 of the Constitution prohibits a state from passing an ex post facto law. In the instant case, Nilson asserts a violation of Art. 1, § 9 which prohibits Congress from passing an ex post facto law. We think that the two prohibitions are identical.

time of the commission of the offense; and did not deprive the accused of any substantial right or immunity possessed by them at the time of the commission of the offense charged.

. . . .

[T]herefore, we agree with the Supreme Court of North Carolina in holding that the law granting the right of appeal to the State from the Superior to the Supreme Court of the State was not an *ex post facto* law within the meaning of the Constitution of the United States.

181 U.S. at 597, 21 S.Ct. at 733.

Nilson's second contention is that the reading that we give § 3731 would constitute manifest injustice because it would interfere with Nilson's "antecedent rights." We start with the observation that this argument may be answered in part by the conclusion in *Mallett* that the North Carolina statute "did not deprive the accused of any substantial right or immunity possessed by them at the time of the commission of the offense charged." *Id.* The major difficulty in assessing the validity of the contention is that nowhere does Nilson clearly define the "antecedent rights" claimed to be infringed. Nilson argues that the case is a criminal prosecution, that appeals by the prosecution are exceptional and disfavored, and that ambiguous statutes giving the right of appeal to the prosecution should be strictly construed against the government. While we do not doubt the validity of these principles, we deem *Bradley v. Richmond School Board, supra,* the controlling authority, and it permits retrospective application of a statute enacted while litigation is pending unless such application results in manifest injustice.

We do not deem the nonexistence of a right to obtain review of the grant of a new trial, especially one which we will show was improvidently granted, to create an antecedent right. This is particularly true where Nilson, having sought and obtained a new trial, now asserts that it would be subjected to double jeopardy if it is tried anew. While it may be distasteful to Nilson to have its apparent victory in setting aside its original conviction snatched from it, we do not think that it has any right to profit from that victory when, on the merits, the victory is not justified. Even before the amendment to § 3731, an unjustified post-verdict grant of a new trial could be redressed by the government by a petition for a writ of mandamus. *See Will v. United States,* 389 U.S. 90, 97–98, 88 S.Ct. 269, 274–275, 19 L.Ed.2d 305 (1967), (citing *Ex parte United States,* 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916)); *In re United States,* 565 F.2d 173 (1 Cir.1977); *United States v. Newman,* 456 F.2d 668 (3 Cir. 1972). The panel which considered the government's application for mandamus denied it for reasons which it did not disclose. All the same, in light of the authorities cited, Nilson should not have assumed that the order granting a new trial was absolutely final. We therefore hold that the legislation giving the government the right to appeal a post-verdict grant of a new trial enacted after Nilson's conviction did not interfere with any antecedent right of Nilson's and that retrospective application of the statute thus results in no manifest injustice.

**B. The Merits**

Nilson moved for a new trial[8] on the grounds that the district court was in error in failing to instruct the jury that "fraudulent intent" was a requisite element of an infraction of the crime charged, and in instructing the jury that the materiality of the statements was a question for the court and not the jury and that the statements were material. Nilson also contended that the verdict was against the weight of the evidence.[9] The district court granted the

---

8. In fact, the motion was for a judgment of acquittal, or in the alternative, for a new trial. The judgment of acquittal was denied, and the correctness of this ruling is not before us. We therefore need not consider the grounds on which it was based.

9. Before us, Nilson does not advance the contention that the evidence was legally insufficient to warrant conviction.

motion on the ground, expressed in an oral opinion, that its instructions, while covering all essential elements of the crime, raised questions whether the elements were "stated in the sequential fashion" set forth in *United States v. Race*, 632 F.2d 1114 (4 Cir.1980), so that "out of an abundance of caution, the motion for the new trial should be granted."

In denying the government's motion for reconsideration of this ruling, the district court, in a written opinion, advanced a different explanation of why the new trial was granted. This time the district court ruled that "fraudulent intent is a necessary element under 18 U.S.C. § 1001 [and] that the jury was not adequately instructed that fraudulent intent was an essential element which the government was required to prove." The district court commented on its observation that the instruction was not given in proper "sequential fashion" by saying that it had instructed the jury as to fraudulent intent with respect to the charge of mail fraud but that this aspect of its instructions could not compensate for its omission to give a similar charge with respect to the charge of false statements, since "the jury may not have understood the necessary intent required for conviction [of false statements]." Finally, the district court assigned as a reason for granting the new trial its instruction to the jury that the statement made by Nilson was material.

Our very recent decision in *United States v. Norris*, 749 F.2d 1116 (4 Cir. 1984) decides, if indeed the law in this circuit was not settled, both that (1) "[t]here is no requirement that the false statement influence or effect the decision making process of a department of the United States government," 749 F.2d at 1121, so that fraudulent intent is not a necessary element of the crime, and (2) "[m]ateriality is a question of law to be determined by the trial judge," 749 F.2d at 1122. It therefore follows that the district court granted the motion for a new trial on

an erroneous legal basis. Its order granting the new trial will be reversed, the jury's guilty verdict reinstated, and the case remanded for entry of judgment on the verdict.

## II.

### No. 84–5180

Because we reverse the grant of the motion for a new trial and direct that the original verdict be reinstated, there is no occasion to retry Nilson. The claim that such retrial would place Nilson in double jeopardy is moot, and the appeal in No. 84–5180 will be dismissed.

## III.

### No. 84–1336

In granting interim injunctive relief against Nilson's suspension from contracting with the government pending trial of the criminal charges, the district court proceeded on the basis that Nilson was entitled to relief, because, *inter alia*, the constitutionality of a suspension pending trial and before conviction was not a frivolous question. Indeed, Nilson's whole theory of the case was that there had been no conviction and that it would prevail on the merits of the criminal case.

Nilson now stands convicted, and it is manifest that interim injunctive relief must now be denied if, indeed, the case has not been rendered moot.

No. 84–6634—REVERSED AND RE-MANDED.

No. 84–5180—APPEAL DISMISSED.

No. 84–1336—REVERSED.[10]

---

**10.** As to Checker and Millen, the injunction granted is vacated and the case remanded to be

dismissed for mootness. *See* n. 2, *supra*.