**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Mahendra K. TANDON, Defendant–Appellant.**

No. 95–3148.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 30, 1996.

Decided April 18, 1997.

Dan Aaron Polster, Asst. U.S. Attorney, Office of the U.S. Attorney, Cleveland, OH, Robert E. Lindsay (briefed), Alan Hechtkopf, Karen M. Quesnel (argued), Yoel Tobin, U.S. Department of Justice, Appellate Section Tax Division, Washington, DC, for Plaintiff–Appellee.

Phillip J. Korey (argued and briefed) Cleveland, OH, for Defendant–Appellant.

Before: BOGGS and SILER, Circuit Judges; and McCALLA, District Judge.*

BOGGS, J., delivered the opinion of the court, in which SILER, J., joined. McCALLA, D.J. (*pp.* 492–94) delivered a separate opinion concurring in part and dissenting in part.

BOGGS, Circuit Judge.

Mahendra Tandon, a physician in Cleveland, Ohio appeals from his jury conviction and sentence on three counts of willfully filing false personal income tax returns for the years 1986, 1987, and 1988, in violation of 26 U.S.C. § 7206(1), and one count of willfully aiding and assisting in the filing of a false corporate return for the year 1988, in violation of 26 U.S.C. § 7206(2). The district court sentenced Tandon to 18 months in prison and one year of supervised release and fined him $10,000. On appeal, Tandon argues that the district court erred in (1) allowing evidence of the depreciation of a Rolls–Royce on his tax returns because it constituted a constructive amendment or variance to the indictment; (2) instructing the jury that

* The Honorable Jon P. McCalla, United States District Judge for the Western District of Tennes-  see, sitting by designation.

the issue of materiality was a question of law to be decided by the district court; (3) refusing to provide an "advice of counsel" instruction; and (4) determining his sentence. We affirm.

## I

Tandon ran the Saint Clair Industrial Medical Center in Cleveland, Ohio during the relevant years 1986 though 1988. In 1988, the clinic was incorporated as Superior Medical Industrial Center, Inc. ("Superior Medical"). In April 1985, Tandon had purchased the property where his medical practice was located, but in October of that year, had deeded the property to his father. The deed was promptly recorded. In November of that same year, however, the property was deeded back to Tandon but the deed this time was not recorded until May 1988, when the property was deeded to Tandon's son.

Tandon paid the mortgage on the property and also depreciated it on his 1986 and 1987 income tax returns. He also received the rental money generated by apartments and a garage located on the property.

Tandon's personal income tax return for 1986 misstated total income received from his medical practice. He reported $151,375.44 in income from his medical practice when in fact he received over $185,000 in income. His 1987 personal income tax return also misstated income from his medical practice, reporting $157,126.69 in income when in fact he received over $196,000 in income. Additionally, Superior Medical's corporate return for 1988 failed to report tens of thousands of dollars in medical income and Tandon's personal income tax return for 1988 failed to report the income omitted from the corporate return.

Tandon was directly involved in preparing his personal tax returns for 1986, 1987, and 1988, as well as in preparing Superior Medical's corporate return for 1988. He told his secretary, Angela Alshabani, to type his personal returns for 1986 and 1987 and to type Superior Medical's corporate return for 1988, providing her with all the necessary figures. Additionally, Tandon's 1988 personal tax return appeared to have been handwritten by Tandon. He also signed his personal returns for all three years, declaring under penalty of perjury that to the best of his knowledge the returns were true, correct, and complete. Superior Medical's corporate return, however, was signed by Tandon's sister, Indira Khanna, even though Tandon prepared the return. Indira Khanna signed it because she was named as corporate president on the incorporation documents. However, she had her own medical practice in Pennsylvania, did not see patients at the clinic, and did not exercise any control over the clinic's personnel or operations.[1]

Tandon's tax returns were problematic in other respects as well. For one, Tandon depreciated a Rolls–Royce he had leased at the end of 1986 on his 1986 and 1987 returns, and Superior Medical depreciated the vehicle on its 1988 corporate return, even though this could not be done under the tax code because neither Tandon nor Superior Medical owned the Rolls. In addition, he deducted the lease payments. Moreover, while the maximum allowable deduction for automobiles was $4,800 a year, Tandon actually depreciated $22,880 on his 1987 return, and Superior Medical depreciated the same amount on its 1988 return. Furthermore, he depreciated the vehicle so that the IRS had no way of knowing that it was a car that was being depreciated. Nowhere on any of the returns was the car described or identified and it was depreciated in a section of the returns that specifically stated, "Do not use this part for automobiles." In addition, he depreciated the Rolls on his 1986 tax return as if it had been placed in service during the 1986 tax year and then depreciated the Rolls on his 1987 tax return as if it had been

---

1. Superior Medical's corporate records indicated that Indira Khanna was the only officer of the incorporated clinic and its only shareholder. At trial, the government introduced a business lease application, which appears to bear Tandon's signature, listing him as the sole owner of Superior Medical. Tandon insisted at trial that this document had been forged even though the document was kept in the Crestmont Cadillac's regular course of business and was authenticated by its vice president. Tandon did admit to having gone to Crestmont Cadillac in 1989 to "help" Superior Medical lease a car.

placed in service during that year. Superior Medical's corporate return for 1988 also depreciated the Rolls as if it had been placed in service beginning in 1988.

Tandon testified that he had depreciated the Rolls–Royce on the advice of people at Crestmont Cadillac and on the advice of an accountant. Other evidence, however, indicated that Tandon had requested that Crestmont Cadillac not depreciate the car so that Tandon himself might do so.

Tandon also funneled money from his medical practice into several different accounts. The receipts from Superior Medical were deposited into various accounts to which Tandon had access, although his name did not appear on all of the accounts. For example, in 1986 Tandon had Alshabani sign a signature card for a bank account that was a depository for some of the income from Tandon's medical practice. Alshabani testified that Tandon had told her that the account had been established to help her pay tuition while she was attending college but that she had received less than $500 in tuition reimbursement. Another account was listed in his son's name.

In 1989, Tandon was notified that he would be audited for 1987.[2] After the notification, Tandon filed an amended tax return for 1987, reporting an additional $56,000 in income. The amended return indicated that $18,000 was for rental income and $38,000 was a loan repayment. On December 4, 1989, Superior Medical also filed an amended tax return, reporting an additional $37,459 in income. The reported basis for this change was that the "corporation elects to pay tax on retained earnings." At trial, Tandon claimed that the understatement of income was simply a mathematical error. He also indicated that he did not know why the corporation had filed an amended return. According to Tandon, his sister had asked someone to check the books and that this person had advised them that they needed to report the additional income.

In October 1989, Tandon's case was referred to the criminal division. After being notified of this, Tandon tried to stall the investigation. For example, in June 1990, when investigator Dever, who was assigned to the criminal investigation, went to issue Tandon a summons for Superior Medical's records, Tandon told Dever to contact Indira Khanna because she was the president of Superior Medical. Tandon also told Dever that he should direct all his questions to her because he had nothing to do with Superior Medical. When Dever did contact Indira Khanna, she refused to answer any questions. At trial, however, Tandon testified that he was the vice president of Superior Medical and was the custodian of its records.

During the investigation, Tandon also told Dever that he had filed an amended 1987 income tax return that correctly reported the amount of his income, but that he had misclassified some of the additional income as a loan repayment. He denied having omitted over $24,000 in income on his 1988 personal tax return.

Additionally, he told Dever that he had deposited medical receipts into two bank accounts in the name of Manoj Tandon, his son, and that these receipts had been reported on Superior Medical's 1988 income tax returns. One week later, however, he admitted that he had failed to report in 1986 and 1987 medical receipts deposited into a bank account at Society National Bank but that this oversight would have been offset by additional deductions that he could have claimed but did not, such as payments to his father in the amount of $18,000 for rent on the St. Clair property and $17,000 in legal fees he had paid to his father. According to Tandon, he had paid his father using seven $5,000 checks, which he had made out to his brother V.C. Tandon, also known as Vibhava.

Vibhava told Dever instead that at least $28,000 of the $35,000 in checks had been intended to repay a loan that Vibhava had extended to Tandon. This story was consistent with what Vibhava told the grand jury. At trial, however, Vibhava testified that after an initial misunderstanding Tandon had made it clear that the money was intended to pay for their father's health care rather than as a repayment on the loan, and that Tandon

**2.** This was an expansion of an existing audit for the years 1984 through 1986.

had told him that the money had come from rental income from property that his father owned in Cleveland.[3]

Vibhava's story was not the only one that changed regarding the $35,000. At trial, Tandon testified that he was collecting rents from the tenants at the St. Clair property, which he claimed was owned by his father during 1986 and 1987. He also testified that the money had been given to Vibhava in 1986 in lieu of rental payments to his father and was intended to support his father. Moreover, he testified that $17,000 of the $35,000 could be considered an "advance payment" for 1987 rents, that $14,000 represented the medical clinic's own 1986 rent, and that $4,000 represented rent payments that he had collected from tenants during 1986.

Tandon's other brother, Alok, testified at trial that in 1989 he received a 1099 form supplied by Tandon, reporting $18,000 of rental income to their father for 1987. Alok also allegedly received a similar document covering 1986. According to Alok's testimony, Alok went to a tax consultant in India, who prepared and typed his father's personal income tax returns for 1986 and 1987, reporting $18,000 of rental income each year. Alok testified that he signed the returns and arranged for them to be brought back to the United States. This testimony, however, was contradicted by Alshabani who testified on rebuttal that she typed these returns in Cleveland at the defendant's direction in 1989.

After indictment and a jury trial, Tandon was convicted on three counts of willfully filing false personal income tax returns for the years 1986, 1987, and 1988, in violation of 26 U.S.C. § 7206(1), and one count of willfully aiding and assisting in the filing of a false corporate return for the year 1988, in violation of 26 U.S.C. § 7206(2). The district court sentenced him to 18 months in prison and one year of supervised release. He was also fined $10,000. As discussed above, Tandon raises four issues on appeal: (1) the district court erred in allowing evidence of the depreciation of a Rolls–Royce on his tax returns because it constituted a constructive amendment or variance to the indictment; (2) the district court erred in instructing the jury that the issue of materiality was a question of law to be decided by the district court; (3) the district court erred in refusing to provide an "advice of counsel" instruction; and (4) the district court erred when determining his sentence. We address the issues in the order presented.

## II

Tandon contends that the introduction of evidence relating to improper deductions for the Rolls–Royce constituted a constructive amendment of the indictment or a prejudicial variance. This argument is without merit.

A constructive amendment occurs when the presentation of evidence and jury instructions so modify essential elements of the charged offense as to create a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment. *United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir.1986). A variance occurs when the terms of the indictment are unchanged, but the evidence at trial proves facts that are materially different from those alleged in the indictment. *Ibid.* In this case, we are convinced that neither occurred. Counts one and two of the indictment alleged that the defendant understated total income on his 1986 and 1987 returns, and the evidence concerning the impropriety of the deductions regarding the Rolls–Royce directly proved those allegations. Since deductions are subtracted from gross or adjusted gross income to arrive at total income, questions relating to overstatement of deductions go directly to the issue of whether Tandon understated his total income.

## III

Tandon also argues on appeal that the district court committed error by failing to submit the question of materiality to the

---

**3.** When Vibhava was confronted with his grand jury testimony, he testified that he had misunderstood the question asked before the grand jury.

jury, even though Tandon himself requested the instruction that was given on materiality. *See* Joint Appendix at 53 (containing Tandon's requested jury instruction on materiality).[4]

Tandon seeks to take advantage of the change in the law created by the Supreme Court's decision in *United States v. Gaudin,* —— U.S. ——, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), since defendants are entitled to invoke the new rule as controlling. *See Griffith v. Kentucky,* 479 U.S. 314, 327–28, 107 S.Ct. 708, 715–16, 93 L.Ed.2d 649 (1987). His is one of those cases where the district court's instruction comported with this circuit's law at the time of trial,[5] but was called into question when the Supreme Court decided in *Gaudin* that the Sixth Amendment guarantees a criminal defendant's right to have a jury decide each and every element of the offense charged, including the issue of materiality. *See Gaudin,* —— U.S. at ——, 115 S.Ct. at 2320.

The *Gaudin* decision has put the circuits, including our own, in a quandary as to how to deal with the group of cases where the jury instructions, though correct at the time of trial, have been called into question by the time of appellate review. And the dust has yet to settle. The Supreme Court on November 15, 1996, granted certiorari in a Florida case to address a split in the circuits over when reversal is required for convictions obtained prior to the Supreme Court's decision in *Gaudin. United States v. Johnson,* 82 F.3d 429 (11th Cir.), *cert. granted,* —— U.S. ——, 117 S.Ct. 451, 136 L.Ed.2d 346 (1996) (certiorari granted to address how *Gaudin* is to be applied to cases then on direct appeal in circuits where a *"Gaudin*-type objection" would have been frivolous at the time of trial).

The grant of certiorari also has a direct effect on this court's consideration of *United States v. McGhee,* 87 F.3d 184 (6th Cir.1996), which had been vacated by this court's decision granting a rehearing en banc. *United States v. McGhee,* 95 F.3d 1335 (6th Cir.1996) (vacating decision holding that the trial court's failure to submit question of materiality to jury was not plain error).[6] It will also affect numerous other decisions throughout the circuits, which, like our own circuit, have had to struggle with the aftermath of the *Gaudin* decision. *See, e.g., United States v. McGuire,* 99 F.3d 671 (5th Cir.1996) (en banc) (instruction on the only count for which defendant was convicted did not incorrectly remove the materiality issue from the jury and the fact that the instruction on another count, for which the defendant was acquitted, did incorrectly remove the materiality element did not constitute reversible error); *United States v. Keys,* 95 F.3d 874 (9th Cir. 1996) (en banc) (materiality of a statement in a perjury prosecution is a question for the jury and failure to instruct the jury that the government was required to prove materiality entitled the defendant to a new trial); *United States v. Ross,* 77 F.3d 1525 (7th Cir.1996) (defendant not entitled to a new trial even though he had established plain error resulting from trial court's failure to submit to the jury the issue of materiality of defendant's false statements concerning matters within the jurisdiction of the Department of Energy); *United States v. Randazzo,* 80 F.3d 623 (1st Cir.1996) (unpreserved error by trial court in failing to submit issue of materiality to the jury as required under *Gaudin* is subject to plain error review and does not require automatic reversal); *United States v. Kramer,* 73 F.3d 1067 (11th Cir.) (retroactive application of *Gaudin* to a case

---

**4.** The district court instructed the jury as follows:

I further instruct you that the issue of materiality is a question of law to be decided solely by the Court. I have determined that the omitted income and additional deductions, if proven, constitutes a material falsity.

As I have said, however, it is up to you to decide whether the stated income and deductions were, in fact, false. If you find that these amounts as reported were false, then the return is false as to a material matter.

This instruction mirrored the instruction Tandon provided to the court. *See* Joint Appendix at 53.

**5.** At the time of trial, materiality for purposes of § 7206 was a question of law. *United States v. Fawaz,* 881 F.2d 259 (6th Cir.1989).

**6.** Reargument in *McGhee* has been postponed until *Johnson* has been decided. *See United States v. McGhee,* No. 95–6323 (6th Cir. Nov. 26, 1996) (order holding case in abeyance until final judgment in *Johnson* has been rendered).

on direct review is subject to plain error review and does not require reversal), *cert. denied*, —— U.S. ——, 117 S.Ct. 516, 136 L.Ed.2d 405 (1996); *United States v. Baumgardner*, 85 F.3d 1305 (8th Cir.1996) (court's failure to submit question of materiality to the jury in a prosecution for making a material false statement to the Social Security Administration was plain error that affected defendant's substantial rights); *United States v. David*, 83 F.3d 638 (4th Cir.1996) (failure to instruct the jury on the element of materiality constituted plain error and seriously affected the fairness, integrity, and public reputation of the judicial proceedings, requiring court to reverse); and *United States v. Lopez*, 71 F.3d 954 (1st Cir.1995) (failure to instruct jury on materiality element of false statements was per se reversible error), *cert. denied*, —— U.S. ——, 116 S.Ct. 2529, 135 L.Ed.2d 1053 (1996).

While we are cognizant of the post-*Gaudin* turmoil, we believe this case is sufficiently distinct that it is not affected substantially by these events. Unlike most post-*Gaudin* cases, Tandon actually requested the materiality instruction. Normally, this is treated as invited error and "not even the plain error doctrine permits reversal on the ground that the trial court granted a defendant's request to charge." *United States v. Sharpe*, 996 F.2d 125, 128–29 (6th Cir.1993) (quoting *United States v. Young*, 745 F.2d 733, 752 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985)), *cert. denied*, 510 U.S. 951, 114 S.Ct. 400, 126 L.Ed.2d 347 (1993). Under the invited error doctrine, an error introduced by the complaining party "will cause reversal 'only in the most exceptional situation.'" *Id.* at 129 (citations omitted). While review of invited error in an instruction may be appropriate "when the issue arises by virtue of a change in law while the appeal is pending," *United States v. Mkhsian*, 5 F.3d 1306, 1310 (9th Cir.1993), this case is not of such an exceptional nature as to require reversal. Unlike *Mkhsian*, the instruction did not permit the jury wrongly to reject any of Tandon's defenses, since he never argued at trial that the failure to include additional income on his tax returns or the illegal deductions were not material. *See id.* at 1311 (the instructions as

given permitted the jury wrongly to reject Mkhsian's entrapment defense). Additionally, unlike the *Mkhsian* court, we do not believe that the error seriously affected the fairness, integrity, or public reputation of the proceedings because overwhelming evidence against Tandon exists.

In this case, a plausible theory existed upon which Tandon could have based an objection to a materiality instruction that removed the issue from the jury. By the time of Tandon's trial, a crack in the "wall of authority" that materiality was an issue for the judge to decide had begun to appear. The Ninth Circuit decision in *United States v. Gaudin* had held that the court's withdrawal of the issue of materiality for the jury was plain error. 28 F.3d 943 (9th Cir.1994), *aff'd*, —— U.S. ——, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). Moreover, the Supreme Court's affirmance of *Gaudin* was foreshadowed in *Sullivan v. Louisiana*, 508 U.S. 275, 277–78, 113 S.Ct. 2078, 2080–81, 124 L.Ed.2d 182 (1993) ("The prosecution bears the burden of proving all elements of the offense charged, and must persuade the fact finder 'beyond a reasonable doubt' of the facts necessary to establish each of those elements."); *see also Gaudin*, 28 F.3d at 947 (the Supreme Court line of authority, beginning with *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), puts into question the recent circuit opinions holding that materiality is a question of law). Additionally, another circuit had begun to question the wall of authority as well. *See United States v. Staniforth*, 971 F.2d 1355, 1358 (7th Cir.1992) (questioning the soundness of circuit court decisions holding that materiality is a question of law to be decided by a judge). We believe that these cases show that Tandon invited the error when requesting the instruction because, at the time of his trial, an objection to a materiality instruction like the one he had requested would not necessarily have been futile. Because Tandon's requested instruction invited the error, this case can be decided without determining whether a plain or harmless error standard of review should apply. Thus, this case is not controlled by the issue to be decided by the Supreme Court in *Johnson*.

## IV

■ Next, Tandon claims that he was deprived of a fair trial because the district court refused to give an "advice of counsel" instruction. We do not believe that the district court erred in failing to give such an instruction.

■ In refusing to give the instruction, the district court pointed out that there was no evidence that Tandon had been given any such tax advice or that he had made a full disclosure to a tax advisor. We agree and it is well established that a jury instruction should not be given if it lacks evidentiary support or is based on speculation. *United States v. Lindo,* 18 F.3d 353, 356 (6th Cir. 1994). While Tandon did testify that he relied on the advice of his accountant, his testimony does not indicate that he provided full disclosure to a tax advisor. Therefore, even were his testimony enough to establish that he relied on counsel's advice in good faith, there is no evidentiary support for the first element of an advice of counsel defense—that he fully disclosed all pertinent facts to counsel. *See Ibid.; see also United States v. Hatchett,* 918 F.2d 631, 638 (6th Cir.1990) (advice of counsel defense "requires not only evidence of disclosure, but also evidence that the facts disclosed are relevant"), *cert. denied,* 501 U.S. 1223, 111 S.Ct. 2839, 115 L.Ed.2d 1008 (1991).

## V

A. *Calculating the base offense level*

Tandon also argues on appeal that the district court erred in calculating his sentence. First, he argues that the district court calculated his sentence using the wrong version of the sentencing guidelines, and thus violated the constitutional prohibition against *ex post facto* laws because of changes to § 2T1.1 of the sentencing guidelines. We need not address this argument because the version of the sentencing guidelines he claims should have been used was in fact used by the court to compute his sentence.

■ Second, Tandon argues that the district court erred in computing the "tax loss" to be used in calculating the "base offense level" because it did not reduce the amount of the loss by the additional amounts he paid the IRS in 1989 and 1990. Tandon's basic argument is that the tax loss should be calculated to include only the actual loss to the government. We do not find Tandon's argument persuasive. Rather, we agree with the Fifth Circuit's holding in *United States v. Moore,* 997 F.2d 55, 59–62 (5th Cir.1993), that "tax loss" for purposes of §§ 2T1.3 and 2T1.4 is based on the amount by which the income was understated on the false tax returns and not on whether the government ultimately lost money. Sound policy also supports this conclusion since Tandon's theory would lead to the perverse result of allowing any criminal to nullify much of the burden of his crime simply by paying the tax liability once the IRS had begun to audit or investigate.

Tandon's other argument, that the district court erred in considering "civil" tax issues such as the 1985 tax loss and Rolls–Royce deductions, is also unpersuasive. Basically Tandon argues that tax issues relating to 1985, a year for which he was not indicted, could not be considered by the district court because they were not part of the underlying criminal conduct. We disagree. First, the Rolls–Royce deductions constituted part of the criminal conduct for which Tandon was convicted and thus were not uncharged "relevant conduct." *See United States v. Pierce,* 17 F.3d 146, 150 (6th Cir.1994).

■ Second, the district court specifically found that the 1985 tax loss arose from relevant criminal conduct, and thus, included it in the tax loss calculation. Moreover, even if the tax loss had been reduced by $5,314, the amount of the 1985 tax loss, the end result would not have changed since Tandon would have received the same base offense level for any tax loss between $40,001 and $80,000. The district court found that the aggregate tax loss totaled $58,544. If the 1985 tax loss were not included in this calculation, the tax loss would have totaled $53,230, which is still within the $40,001 to $80,000 range.

Additionally, Tandon's argument that there was no evidence of underreporting for 1985 is also unpersuasive. Not only did Tan-

don not object below to the statement in the PSR that there was a 1985 tax loss, but also he indicated that his 1990 check to the IRS in the amount of $18,400 was for tax years including 1985.

■ Finally, Tandon argues that the district court erred in not reducing the tax loss based on the $20,000 in unreported deductions that he could have claimed. Again, we find no merit in this argument. Even if the court did err in this respect, this would not have affected the base offense level because it would have only reduced the tax loss by $5,600 (28% of $20,000), which would not have changed the base offense level since the total tax loss would have still fallen within the range of $40,001 to $80,000 because even without this amount, the total tax loss would have been $52,944 ($58,544 minus $5,600).

In sum, any error in calculating the tax loss was harmless. Even if the tax loss were reduced by both the 1985 tax loss and the $20,000 in unreported deductions, it would not have affected the base offense level because the total tax loss would have still equaled $47,630 ($58,544 minus $5,314 and $5,600), which is well within the range of $40,001 to $80,000.

B. *Enhancements to Tandon's sentence for use of sophisticated means and obstruction of justice, and failure to give him a reduction in his sentence for acceptance of responsibility*

■ Tandon also argues that the district court erred in giving him a two-level upward adjustment for the use of sophisticated means to impede discovery of the nature or extent of the offense. Once again, Tandon has failed to demonstrate any error. He was not given the enhancement merely because he filed false returns. Rather, the district court noted five additional factors supporting the enhancement of Tandon's sentence for use of sophisticated means: (1) the unreported medical receipts were deposited in numerous bank accounts not directly attributable to Tandon; (2) money was withdrawn in the form of cashier's checks made out to his children; (3) "gyrations ... occurred in the management of the corporation"; (4) the placement of the Rolls–Royce deduction on the returns was deceptive; and (5) Tandon manipulated the ownership of the clinic property and rental income so that they could be reported on his father's return at a lower rate. While in isolation these things may not have been enough to constitute "sophisticated means," taken together, however, as noted by the district court, they demonstrate a sophisticated and multi-pronged effort to deceive the IRS and evade paying taxes.

■ We also believe that the district court did not err in giving a two-level enhancement based on obstruction of justice. Not only is there evidence that Tandon perjured himself on the stand when he testified that a Crestmont Cadillac lease application was a false document, but there was ample evidence to show that he attempted to stall the investigation. For example, he told Dever that Indira Khanna was the president of the corporation and that all questions should be directed at her, but later claimed that he was vice-president of Superior Medical and its custodian of records.

■ Finally, Tandon contends that the district court erred in refusing to give him a two-level reduction for acceptance of responsibility. Again, Tandon fails to demonstrate error. The denial of a reduction for acceptance of responsibility was clearly appropriate. Under the sentencing guidelines an adjustment "is not warranted where a defendant perjures himself, suborns perjury, or otherwise obstructs the trial or the administration of justice, regardless of other factors." USSG § 3E1.1 (1988). In this case, not only did Tandon not admit responsibility, which is usually required, but also, as the evidence demonstrates, he perjured himself, may have suborned perjury, and obstructed the investigation. The mere fact that he filed an amended 1987 tax return, assisted in the filing of an amended 1988 corporate tax return, and paid some additional money to the IRS does not require a reduction for acceptance of responsibility. Restitution is simply "a factor considered in determining whether the defendant qualifies for a two-level reduction." *United States v. Garlich*, 951 F.2d 161, 163 (8th Cir.1991). In this

case, Tandon's other actions outweighed any attempt by him to make restitution.

## VI

For the foregoing reasons, Tandon's conviction and sentence are **AFFIRMED**.

McCALLA, District Judge, concurring in part and dissenting in part.

Because I believe that this court should withhold judgment on whether the district court committed error by failing to submit the question of materiality to the jury until the United States Supreme Court decides *United States v. Johnson*, 82 F.3d 429 (11th Cir.), *cert. granted*, —— U.S. ——, 117 S.Ct. 451, 136 L.Ed.2d 346 (1996), I respectfully dissent from Parts III and VI of the court's opinion.

As the court correctly notes, this case arises from the aftermath of the Supreme Court's decision in *United States v. Gaudin*, —— U.S. ——, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). In *Gaudin*, the defendant was convicted under 18 U.S.C. § 1001 for making false statements on loan documents. At trial, the district court instructed the jury that the issue of materiality was a question of law for the court to decide and that it had decided that the statements were material. On review, however, the Supreme Court held that "the Fifth and Sixth Amendments require conviction by a jury on all elements of the crime," including materiality. —— U.S. at ——, ——, 115 S.Ct. at 2318, 2320. The Court's decision in *Gaudin* immediately called into question an entire group of cases then pending on direct appeal in circuits where it was well established that materiality was a question of law. *E.g., United States v. Fawaz*, 881 F.2d 259 (6th Cir.1989). Since *Gaudin*, the circuit courts have struggled with how to review those cases where the jury instructions complied with the law at the time of trial but were called into question by the time of appellate review.

On November 15, 1996, however, the Supreme Court granted certiorari in *United States v. Johnson*, 82 F.3d 429 (11th Cir.), *cert. granted*, —— U.S. ——, 117 S.Ct. 451, 136 L.Ed.2d 346 (1996), in order to resolve this exact issue. As a result of the Supreme Court's granting of certiorari in *Johnson*, this court, sitting en banc, postponed reargument of *United States v. McGhee* until after the Supreme Court decides *Johnson*. No. 95–6323 (6th Cir. Nov. 26, 1996).

Nonetheless, the majority seeks to distinguish this case from both *Johnson* and other post-*Gaudin* cases, including *McGhee*, on the grounds that Tandon actually requested the materiality instruction and is therefore barred by the invited error doctrine. Under the invited error doctrine, a defendant is normally precluded from challenging any action taken by the district court at the defendant's request. *United States v. Sharpe*, 996 F.2d 125, 128–29 (6th Cir.1993). An appellate court will reverse an invited error "only in the most exceptional situation." *Id.* at 129 (quotations omitted).

As a threshold matter, contrary to the majority's assertions, this case is not easily distinguished from *Johnson*. In fact, as in this case, Johnson requested the challenged materiality instruction. *See Brief for the Respondent, United States v. Johnson*, 82 F.3d 429 (11th Cir.), *cert. granted*, —— U.S. ——, 117 S.Ct. 451, 136 L.Ed.2d 346 (1996), 1997 WL 37887, at *11 n. 3 ("Petitioner's counsel not only requested the very instruction that informed the jury that the materiality question had been decided against petitioner, but objected to the presentation of any materiality evidence to the jury on the ground that materiality was a matter for the Court and an improper matter for the jury.") (internal citations and quotations omitted). Although the Eleventh Circuit did not address the issue of invited error in its review of the case, the matter is still before the Supreme Court on the basis of the factual record. Accordingly, this court should not address the issue prior to the Supreme Court's decision in *Johnson*.

In addition, a review of the policy underlying the invited error doctrine suggests that it is not applicable to cases such as this where there has been an intervening change in the law. Generally, the invited error doctrine is designed to prevent a defendant from engaging in tactical gamesmanship—e.g., proposing erroneous jury instructions in an attempt

to create reversible error on appeal. When, as here, the error is only apparent as a result of an intervening change in the law, however, the same policy rationale does not apply. In such cases, the defendant did not propose the jury instruction in an attempt to create a reversible error on appeal. To the contrary, the defendant included the proposed jury instruction because it complied with the clear and uncontroverted law at the time of the trial. Viewed in this light, it is difficult to see what "error" the defendant actually invited.

Recognizing that "review of invited error in an instruction may be appropriate 'when the issue arises by virtue of a change in the law while the appeal is pending,'" *Maj. Op.* at 488 (quoting *United States v. Mkhsian,* 5 F.3d 1306, 1310 (9th Cir.1993)), the majority further seeks to distinguish the facts of this case. Discussing *Mkhsian,* the court writes:

> Unlike *Mkhsian,* the instruction did not permit the jury wrongly to reject any of Tandon's defenses, since he never argued at trial that the failure to include additional income on his tax returns or the illegal deductions were not material. Additionally, unlike the *Mkhsian* court, we do not believe that the error seriously affected the fairness, integrity, or public reputation of the proceedings because overwhelming evidence against Tandon exists.

*Maj. Op.* at 489 (internal citations omitted). Rather than distinguishing this case, however, in reality, the majority has engaged in both harmless and plain error review. If I were convinced that the proper mode of review were either of these alternatives and that no other mode of review was appropriate, I would not be adverse to such alternative reasoning. Because I am not so convinced and, in fact, believe that neither is appropriate under these circumstances, I cannot join the court's opinion.

Finally, relying on the Ninth Circuit's opinion in *Gaudin,* the majority argues that, at the time of Tandon's trial, "a plausible theory existed upon which Tandon could have based an objection to a materiality instruction that removed the issue from the jury." *Maj. Op.* at 488. This same argument, however, is now before the Supreme Court in

*Johnson.* Similar to this case, Johnson's trial occurred some six months after the Ninth Circuit's decision in *Gaudin.* Thus, the timing of Tandon's trial in no way distinguishes itself from the issue before the Supreme Court in *Johnson.*

In addition, contrary to the majority's position, the Ninth Circuit's opinion in *Gaudin* did not dramatically change the law in the Ninth Circuit. Since 1979, in *United States v. Valdez,* 594 F.2d 725 (9th Cir.1979), the Ninth Circuit had held that in cases brought under 18 U.S.C. § 1001 materiality "is an element of the crime that must be determined by the jury." Id. at 728–29. After the Ninth Circuit's decision in *Valdez* and prior to the Supreme Court's opinion in *Gaudin,* however, every circuit, including the Sixth, had reaffirmed the principle that materiality was a question of law. *E.g., United States v. Corsino,* 812 F.2d 26, 31 n. 3 (1st Cir.1987); *United States v. Elkin,* 731 F.2d 1005, 1009 (2d Cir.1984); *United States v. Greber,* 760 F.2d 68, 73 (3d Cir.1985); *Nilson Van & Storage Co. v. Marsh,* 755 F.2d 362, 367 (4th Cir.1985); *United States v. Hausmann,* 711 F.2d 615, 616–17 (5th Cir.1983); *United States v. Chandler,* 752 F.2d 1148, 1150–51 (6th Cir.1985); *United States v. Brantley,* 786 F.2d 1322, 1327 (7th Cir.1986); *United States v. Hicks,* 619 F.2d 752, 758 (8th Cir.1980); *United States v. Daily,* 921 F.2d 994, 1004 (10th Cir.1990); *United States v. Lopez,* 728 F.2d 1359, 1362 n. 4 (11th Cir.1984); *United States v. Hansen,* 772 F.2d 940, 950 (D.C.Cir.1985). Even the Ninth Circuit had repeatedly held that materiality was a question of law in almost all cases except those brought under § 1001. *Gaudin,* 28 F.3d at 945 ("In our circuit, we have held that the issue of materiality in most of these statutes is a question of law for the judge. The exception has been section 1001 cases, in which we have held that it is an element of the crime that must be determined by the jury."). Given this wall of authority, I cannot see how the Ninth Circuit's decision in *Gaudin* could have provided a sufficient basis upon which Tandon could have based a materiality instruction. In fact, as counsel for Tandon undoubtedly knew, no court in this

circuit would have even recognized such an objection.

Even assuming that the breach in the wall of authority created by the Ninth Circuit's opinion in *Gaudin* was sufficient to cast doubt on the continuing vitality of materiality being a question of law, the same rationale should apply to forfeited error, i.e., failure to object, as the majority assumes it does to invited error. There is no basis for holding that a defendant whose counsel did not object to an instruction given the prevailing law at the time of his trial should receive the benefit of an intervening change in the law while a defendant whose counsel proposed the instruction in light of prevailing law, consistent with his professional and ethical duties to the court, should not receive the benefit of the intervening change. To draw a distinction between the two defendants is manifestly unfair.

For the foregoing reasons, I am unable to join the opinion of the court with respect to Parts III and VI. Accordingly, I respectfully dissent.