**NOT RECOMMENDED FOR PUBLICATION**
File Name: 09a0800n.06

**No. 07-6264**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | **Dec 16, 2009** |
| | ) | LEONARD GREEN, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| WELBY THOMAS COX, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |

Before: SILER, GILMAN, and ROGERS, Circuit Judges.

**SILER**, Circuit Judge.  Welby Thomas Cox was convicted for violating 18 U.S.C. § 2314 and was sentenced to serve 75 months of imprisonment concurrently on all charges.  He appeals his conviction on counts 31-39 and his sentence on all counts.  For the reasons explained below, we **AFFIRM IN PART** and **VACATE IN PART** his conviction and sentence, and **REMAND** for further proceedings.

**BACKGROUND**

Beginning in 1998, Cox induced several individuals to invest money with him in Standard Investment Credit Corporation, claiming that he would place the money in high-yield investments. Immediately after Cox made the first of these placements, the money he placed was stolen.

Cox then deposited the remaining money into an E-Trade account.  In 2001, he established the North Central Texas Foundation ("the Foundation"), a nonprofit Texas charitable corporation

and created a trust account on its behalf. Cox deposited investor funds into this trust account. He then designated several bank accounts, some of which Cox used personally, as beneficiaries of the trust. He authorized a series of transfers from the Foundation account to its beneficiaries, transferring funds from the Foundation—funds given to him by the investors—into the accounts for his personal use. He authorized some of these transfers in a 2001 memorandum to the Foundation's trustee. On May 13, 2002, Cox disappeared. He was not seen or heard from for nearly four years.

In the meantime, Eileen Baker, Cox's longtime friend and board member and vice-chair of the Foundation, took over the day-to-day management of the Foundation's affairs. She knew the Foundation was funded by an E-Trade account in Cox's name. She testified that, prior to Cox's disappearance, she did not receive any reports of how the Foundation's money was spent or transferred. Nevertheless, while controlling the Foundation during Cox's disappearance, she transferred certain monies from the Foundation to a beneficiary account. She admitted that she knew the account was used to personally benefit Cox's wife, but maintained that she assumed the money in the E-Trade account belonged to Cox.

Based on these transfers, Cox was indicted for transmitting money in interstate commerce which was knowingly stolen, converted, or taken by fraud in violation of 18 U.S.C. § 2314. He was convicted on thirty-nine counts involving transfers of money made between August 2001 and December 2003—both prior to and during Cox's disappearance—from the Foundation to various bank accounts in Kentucky. The district court calculated Cox's Sentencing Guidelines range as being between 63 and 78 months' incarceration and sentenced him to 75 months on each count, to be served concurrently, and ordered him to pay a $100 special assessment on each count.

No. 07-6264
*United States v. Cox*

On appeal, Cox argues that (1) the evidence was insufficient to convict him for the transfers made by Baker during his absence; (2) the presentation of facts regarding his initial acquisition of the funds created an improper variance from the indictment; (3) the district court erred in refusing to grant a mistrial based on evidence disclosed after trial regarding an attempted transfer into Cox's account, which the bank rejected; and (4) the district court improperly enhanced his sentence for the use of sophisticated means.

**DISCUSSION**

*I. Sufficiency of the Evidence to Support Conviction*

Cox challenges the sufficiency of the evidence to support his conviction on counts 31 through 39 of the indictment because the transfer of these funds occurred while he was missing. We review the sufficiency of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *United States v. Davis*, 473 F.3d 680, 681 (6th Cir. 2007). Because Cox moved for a directed verdict of acquittal at the close of the government's case and again after Cox had presented evidence, we conduct this review de novo. *See United States v. Solorio*, 337 F.3d 580, 588 (6th Cir. 2003).

A defendant need not actually transfer money in interstate commerce himself in order for his conduct to constitute a violation of 18 U.S.C. § 2314. *Pereira v. United States*, 347 U.S. 1, 8 (1954). Instead, the defendant can be convicted if he caused the transfer to occur. *Id.*

Here it is undisputed that Cox had disappeared before the transfers in counts 31-39 were made; Eileen Baker authorized the transfers, and the transfers were not authorized by the 2001

- 3 -

memorandum. Baker testified only that she transferred the money because Mrs. Cox needed the

money, that she would have likely done so even if she thought the money had not come from Cox's

personal account, and that she was not sure whether Mrs. Cox had previously received money from

the Foundation. Since the government has submitted no evidence that Cox caused the transfers in

counts 31-39, the evidence was insufficient to support his conviction and we reverse as to those

counts.[1]

## II. Variance from the Indictment

Cox argues that the district court improperly allowed the government to submit evidence of

his alleged fraud and that the jury was improperly permitted to convict him based on this evidence,

which created a variance from the indictment. We review Cox's claim that the evidence at trial

impermissibly varied from the indictment's allegations for plain error, because Cox failed to object

to the variance at trial. *See United States v. Kuehne*, 547 F.3d 667, 682 (6th Cir. 2008).

A variance occurs when the proof introduced at trial differs materially from the facts alleged

in the indictment, *United States v. Beeler*, 587 F.2d 340, 342 (6th Cir. 1978), and is reversible error

only if the variance implicates the defendant's substantial rights, *United States v. Hathaway*, 798

F.2d 902, 910-11 (6th Cir. 1986). The indicted crimes required the government to show that Cox

transferred money which was "stolen, converted or taken by fraud." *See* 18 U.S.C. § 2314. Since

---

[1]Even though we vacate Cox's conviction as to counts 31-39, his term of imprisonment may not change. Because the district court sentenced Cox to concurrent 75-month terms on each count, the fact that we vacate the conviction means only that Cox is no longer ordered to pay the $100 special assessment for each of these counts. Despite this practical effect, the imposition of a special assessment on each count prevents us from bypassing Cox's claims under the concurrent sentence doctrine. *See Ray v. United States*, 481 U.S. 736, 737 (1987) (per curiam).

the facts were charged in the indictment and supported an essential element of the crime, their presentation during trial did not create a variance from the indictment.

### III. Exculpatory Evidence

Following his conviction, Cox moved for a new trial based on newly discovered evidence. Specifically, he alleged that Stephanie Haysley, the former vice president of National City Bank and a government witness, advised the prosecutor that the bank had rejected a $25,000,000 wire transfer into Cox's account. Cox claimed that neither he nor the prosecutor knew about the rejected transfer until after trial, when Haysley spoke to the prosecutor about it. In the government's response to the motion, the prosecutor revealed that Haysley had advised a government paralegal of the rejected transfer before Haysley took the witness stand at trial, but the prosecutor maintained that he had not appreciated the impact of the information until his post-trial conversation with Haysley. The district court denied the motion, concluding that the newly discovered evidence did not warrant a new trial because it was not credible and would not have changed the result of the trial. Cox now appeals the denial, but rather than arguing a new trial should have been granted on the basis of newly discovered evidence—as he claimed below—he asserts that a new trial was warranted because the prosecution failed to disclose the evidence until after trial in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

Because Cox did not claim a *Brady* violation at the district court, we review his claims here for plain error. *Kuehne*, 547 F.3d at 697-98; *see also* Fed. R. Crim. P. 52(b). Pursuant to *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. "To warrant a new trial arising from a *Brady*

violation, (1) 'the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;' (2) 'that evidence must have been suppressed by the [government], either willfully or inadvertently;' and (3) 'prejudice must have ensued.'" *United States v. Heriot*, 496 F.3d 601, 604-05 (6th Cir. 2007) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). A prosecutor's failure to disclose favorable evidence is prejudicial "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

The district court made factual findings that the evidence was not credible and would not have changed the result, meaning there was no prejudice and, accordingly, no *Brady* violation. Although Cox has alleged prosecutorial misconduct and argued that the new evidence could have undermined the prosecution's theory of the case, he has done nothing to bolster the credibility of the evidence or show that its absence was prejudicial. Testimony that the bank rejected a transfer should be easily supported by bank documents and records, yet Cox has produced none. He similarly has submitted no evidence nor made any argument as to the source of this alleged transfer or how it could be probative of his guilt. Furthermore, although Cox argues that the evidence undermines the prosecution's theory that he created the accounts solely for nefarious reasons, he has neither argued nor presented evidence that the account's legitimate usage has any bearing on his guilt on the charges here. Because the district court correctly found the withholding of evidence not prejudicial, Cox's claim under *Brady* fails.

## *IV. Sentence Enhancement for Sophisticated Means*

Cox's Presentence Report ("PSR") recommended an enhancement for sophisticated means because Cox "orchestrated a series of transactions wherein monies were dispersed from the trust to entities which appeared to be charitable organizations" but were actually "accounts established by the defendant . . . in furtherance of the offense." Sophisticated means refers to an "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." USSG § 2B1.1(b)(9)(C) cmt. 8(b). The district court adopted the PSR's recommendation, over Cox's objection, because it found that Cox had set up a sophisticated method of stealing money from investors and sentenced Cox to 75 months' incarceration based, in part, on the enhancement. We review the district court's factual determinations as to sentencing enhancements for clear error. *United States v. Moore*, 225 F.3d 637, 642 (6th Cir. 2000).

The district court found a sophisticated-means enhancement warranted because Cox had set up a "pretty clever and sophisticated method of setting up these [accounts] so it would appear that money was being transferred to charities." The district court's reliance on the whole of Cox's conduct in making this finding was proper because the enhancement can be based on offense conduct which is on the whole sophisticated, even though the individual aspects of the conduct are not sophisticated. *See United States v. Tandon*, 111 F.3d 482, 491 (6th Cir. 1997) ("While in isolation these things may not have been enough to constitute 'sophisticated means,' taken together, however, . . . they demonstrate a sophisticated and multi-pronged effort to deceive the IRS and evade paying taxes."). It does not appear that Cox was an especially sophisticated investor; his name, address, and social security number were tied to each account and his individual actions lacked sophistication.

He invested funds with individuals who turned out to be thieves, and then withdrew the remaining investments and placed them in an E-Trade account. Finally, once his actions with the investor money began to unravel he simply disappeared, only to return willingly four years later. The district court's conclusion that, on the whole, the actions were sophisticated was not clearly erroneous, especially in light of the fact that Cox actually created several entities to hold the money during the relevant period. *See United States v. Masters*, 216 F. App'x 524, 526 (6th Cir. 2007) ("Although many of [defendant]'s individual actions lacked sophistication, the district court did not commit clear error by applying the sentencing enhancement.").

## CONCLUSION

We **VACATE** Cox's conviction and sentence as to counts 31-39, **AFFIRM** as to the remaining counts, and **REMAND** to the district court to enter a new judgment.